**Tyrone K. HEARN, Plaintiff,**

**v.**

**Thomas K. TURNAGE, Administrator of Veterans Affairs, Defendant.**

**Civ. A. No. 88–C–723.**

United States District Court, E.D. Wisconsin.

Jan. 26, 1990.

---

Tyrone K. Hearn, pro se.

Mel S. Johnson, Asst. U.S. Atty., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

REYNOLDS, Senior District Judge.

On July 8, 1988, plaintiff Tyrone K. Hearn ("Hearn"), proceeding pro se, filed a complaint with this court alleging that the defendant, the United States Veterans Administration ("the VA"), discriminated against him on July 17, 1985, when the VA's Milwaukee Regional Office did not select him to fill a GS–962–10 Contact Representative ("CR") position. Hearn claims that he was not selected for the GS–962–10 CR position because he is an Afro–American. Hearn seeks the following remedies: (1) a retroactive promotion to the GS–962–10 CR position or, if appropriate, a promotion to a substantially equivalent position; (2) back pay from July 17, 1985 until the date Hearn receives his retroactive promotion representing the difference between what Hearn earned as a GS–9 CR and what he would have earned as a GS–962–10 CR;

and (3) any other rights, benefits, seniority, prerequisites of employment he would have received had he been promoted on July 17, 1985.

Hearn originally filed his race discrimination complaint with the VA Regional Office in Milwaukee on January 15, 1986. On June 8, 1988, the Equal Employment Opportunity Commission ("EEOC"), Office of Review and Appeals affirmed the VA General Counsel's decision that there was no race discrimination. The VA claims that the only reasons Hearn was not promoted were: (1) the individual who was selected for the position, James Sponnick ("Sponnick"), had field investigatory experience while Hearn did not; and (2) Sponnick's personality was better suited for the position.

On November 14, 15, and 16, 1989, Hearn's race discrimination claim was tried to this court. Hearn met his initial burden of showing that there was a prima facie case of discrimination. The VA then met its burden of producing evidence that indicated there appeared to be a legitimate, nondiscriminatory reason for not selecting Hearn for the GS–962–10 CR position. Hearn, however, was successful in showing that the reasons the VA produced for not selecting him were not credible, and that race discrimination was a determining factor in his nonselection.

## FINDINGS OF FACT

There were three individuals responsible for making the final decision regarding who would be promoted to fill the GS–962–10 CR position: John McArtor ("McArtor"), the Veterans Service Officer ("VSO") for the Milwaukee Regional VA office at that time, John Kuehl ("Kuehl"), the Assistant VSO in the Milwaukee office who replaced McArtor as the VSO on August 18, 1985, and Paul Stark ("Stark"), the Chief of the Veterans Assistance Service Section. On July 17, 1985, McArtor chose Sponnick for the GS–962–10 CR position which Hearn claims he was not selected for due to his being Afro–American.

The GS–962–10 CR position was created by McArtor in September 1982 in order to develop flexibility within the Veterans Service Division ("VSD").[1] An official Position Description ("PD") was developed by Kuehl and William Kemp ("Kemp"), the Chief of the Veterans Assistance Service Section at that time, on September 13, 1982. The description listed six duties and responsibilities for the position (Def.Exh. 503). The fifth of these duties and responsibilities stated:

> The incumbent will perform Field Investigation of matters pertaining to guardianship and custodianship cases including the suitability of established Fiduciaries.... This element will constitute approximately 25% of incumbents available manhours.

(Def.Exh. 503).

There was no need to develop a framework for promoting an employee to fill the GS–962–10 CR position at this time because the openings were filled through reassignments (Def.Exh. 512 at 2). On October 3, 1982, Keith Thompson was reassigned to the newly created GS–962–10 CR position, and on October 17, 1982, Stark was assigned to a similar position that had the identical PD (Def.Exh. 512 at 2). Thompson testified that at the time he was reassigned to this position he had *no* field investigatory experience. There was no testimony as to whether or not Stark had prior field investigatory experience.

On October 16, 1983, one of the GS–962–10 CR positions became open when Stark was promoted to a Supervisory CR GS–962–11 position (Def.Exh. 512 at 2). At this time, McArtor and Kuehl decided to fill the available GS–962–10 CR position by utilizing the VA's Merit Promotion Plan and promoting an employee from within the Milwaukee office if possible (Def.Exh. 512 at 2).

The first step of the Merit Promotion Plan was to have "subject matter experts" develop a task inventory list for the position in question. This task list "describes what workers do, usually in terms of *tasks* of the job." (Pl.Exh. 9 at 1, 1(b)(1)). From the task list another inventory list was then created which set forth the "knowledge, skills, abilities, and other characteristics ("KSAO")" required to complete successfully the tasks on the inventory list (Pl.Ex. 9 at 1). On the KSAO inventory list the subject matter experts had to indicate whether or not the KSAO was "essential" to the position. In addition, they also had to complete a "KSAO Evaluation Sheet" which required them to indicate (1) whether or not a person had to have a minimum degree of competence in the KSAO to do the job and (2) how useful the KSAO was in distinguishing superior from barely acceptable performance in the job (Pl.Exh. 8).

McArtor and Stark were the subject matter experts for the GS–962–10 CR position, and they worked with a Personnel Management Specialist, Kristine Silver ("Silver"), to develop the task and KSAO inventory lists and the KSAO evaluation sheet (Def. Exh. 511 at 3). The lists were completed on March 7, 1984. The next step was to reduce the lists into a rating and ranking guide that would be used to select finalists for the position. The rating guide was drafted by McArtor, Stark, and Silver and was comprised of five Factor Quality Level Definitions ("FQLDs"): (1) "Oral and written communication skills;" (2) "Organizational skills;" (3) "Knowledge of veterans' benefits as outlined in Title 38;" (4) "Ability to evaluate the quality of records systems and propose improvements;" and (5) "Skill in the use of investigative techniques" (Def.Exh. 505).

McArtor, Stark and Silver determined the total points an individual could receive for each FQLD, and the criteria and experience required for obtaining points. The rating guide was completed on March 8, 1984. The individuals with the highest point totals became finalists for the available position. These finalists were then interviewed by McArtor or Kuehl, and

---

**1.** The Veterans Service Division was composed of the Veterans Assistance Service Section and the Field Service Section (Def.Ex. 512 at 2).

McArtor was responsible for deciding who would receive the promotion.

McArtor originally filled the GS–962–10 CR position on June 10, 1984, by promoting Donald Peasley ("Peasley"). Hearn was never considered for the opening because his application was untimely (Def.Exh. 512 at 3). Peasley vacated the position on March 31, 1985, thereby creating an opening. At this time, Kuehl told McArtor that there was no anticipated need for help with field investigations and that the position was not beneficial to the Veterans Service Division (Def.Exh. 511 at 7; Def.Exh. 512 at 4). McArtor's position was not put on the record (Def.Exh. 512 at 4), but he apparently disagreed with Kuehl because on June 21, 1985, VA Milwaukee station officials followed McArtor's orders and posted Vacancy Announcement No. 520 which announced that the GS–962–10 CR position was available.

Hearn responded to this vacancy notice and became one of six finalists who were selected based on the total points received on the merit promotion rating guide (Def. Exh. 512 at 4). The rating guide used for determining the six finalists was the same one created by McArtor and Stark in March 1984 and used in the hiring of Peasley (McArtor Test.). The six finalists were apparently interviewed individually by Kuehl or Stark. After the interviews were completed, McArtor solicited the recommendations of Kuehl and Stark and then chose Sponnick (McArtor Test.).

McArtor testified that at no time prior to his decision was he aware of the point totals that the six finalists had received in the rating process using the FQLDs. In addition, he testified that he chose Sponnick instead of Hearn because (1) Kuehl recommended Sponnick, (2) Sponnick had field investigatory experience while Hearn did not, and (3) Sponnick's personality was better suited for the position. Hearn, however, argues that the field investigatory and personality reasons are not credible, and the real reason he was not promoted was because he is an Afro–American.

This court finds McArtor's testimony regarding his promoting Sponnick because Kuehl recommended him to be credible. McArtor testified that when he chose Sponnick he already knew that he was leaving his position as the VSO in the Milwaukee Regional Office and that his replacement was going to be Kuehl. Thus, this court finds that McArtor relied heavily upon Kuehl's recommendation and preference, and that Kuehl's reasons for recommending Sponnick over Hearn also must be examined.

Kuehl testified that he recommended Sponnick over Hearn because (1) Sponnick had field investigatory experience while Hearn did not, (2) Hearn had a reputation for losing his temper and had some behavioral problems, and (3) Sponnick's education was better suited for the position. This court, however, finds Kuehl's testimony not to be credible.

The record indicates that Kuehl told McArtor prior to the selection of Sponnick that he did not anticipate having the person who filled the GS–962–10 CR position help with field investigations (Def.Exh. 511 at 7). Thus, this court finds it difficult to believe that Kuehl would choose Sponnick for the position based on experience which Kuehl himself believed would not be utilized. Moreover, Sponnick testified that he did not perform any field investigations while he filled the GS–962–10 CR position. In fact, in April 1986 Sponnick was transferred out of the GS–962–10 CR position, and no one was promoted to replace him because Kuehl abolished the position (Def. Exh. 512 at 6).

Kuehl also claimed that the investigatory experience Hearn had obtained as a GS–9 CR was not comparable to the type of field investigations that the GS–962–10 CR was suppose to conduct. As one example of the difference, Kuehl stated that at times the GS–962–10 CR position required the VA employee to take affidavits and give oaths, responsibility greater than that held by a GS–9 CR. Hearn, however, impeached this portion of Kuehl's testimony by subsequently submitting into evidence a copy of the VA card issued to him which gives him the authority "to take affidavits, administer oaths and affirmations, examine

records and witnesses, and certify to the correctness of papers and documents upon any matter within the jurisdiction of the Veterans Administration" (Pl.Exh. 14).

Kuehl's reference to Hearn's reputation for losing his temper and having behavioral problems also does not withstand scrutiny. Kuehl testified that his belief was based on second-hand information of an incident that occurred on February 17, 1983, between Hearn and his supervisor at the time, Kemp, which ended with Hearn breaking an ashtray on a table and allegedly taking emergency annual leave to cool off. Kemp initially placed an admonishment in Hearn's file regarding this incident, but this was withdrawn from his file after the shortest possible time period (Kemp Test.). During cross-examination by Hearn, Kuehl stated that (1) he never personally supervised Hearn, (2) he could not recall any specific time when people had complained of Hearn's temper, and (3) he could not recall the names of any people who might have complained. Kuehl also admitted that Hearn's personnel records were *not* indicative of someone who had a behavioral problem. In addition, Hearn subsequently submitted a copy of his VA earnings and leave statement for the time period encompassing February 17, 1983, and the statement indicated that Hearn had not taken any annual leave during this period.

The final reason Kuehl provided for recommending Sponnick instead of Hearn, Sponnick's education, also is not credible. Kuehl testified that he believed Sponnick had a bachelors degree in social work and that this was important in his decision. However, neither Kuehl's testimony, nor any other evidence that this court is aware of, suggests that Kuehl ever compared Sponnick's specific educational experience to Hearn's. In fact, Kuehl did not recall interviewing Hearn as a finalist for the GS–962–10 CR position. Hearn, however, testified, and this court believes his testimony, that Kuehl interviewed him for approximately five (5) minutes, that he did not ask him about his education, experience, or background, but instead *told* him that field investigatory experience was an important criteria for the job. Thus, this

court finds that none of the reasons Kuehl offered to explain why he recommended Sponnick instead of Hearn are credible.

McArtor also testified that he chose Sponnick based on reasons other than Kuehl's recommendation. McArtor stated that the primary and most important reason besides Kuehl's recommendation was that Sponnick had field investigation experience while Hearn did not. McArtor claimed that he was aware of this difference between Sponnick and Hearn because he was familiar with their personnel files. He also claimed that he remembered discussing Sponnick's experience with him when he interviewed him for the initial opening of the position in June 1984 when Peasley was promoted to fill the position.

This court, however, finds this aspect of McArtor's testimony not to be credible for numerous reasons. First, McArtor had been told by Kuehl prior to the selection that Kuehl did not anticipate having a need for the person who filled the GS–962–10 CR position to conduct field investigations (Def.Exh. 511 at 7). Second, the vacancy notice announcing the position did not state that prior field investigative experience was a qualification required for the position (Def.Exh. 506). In fact, the announcement did not even state that investigative experience was required.

Third, McArtor testified that he and Kuehl decided Sponnick and Webster Propper ("Propper") were the best candidates for the position, and that Sponnick was chosen instead of Propper because they thought Propper was moving to New Mexico. McArtor also testified that although he believed Propper was the actually the best candidate for the position, he believed that Propper had no prior field investigatory experience. Hearn, however, had McArtor read from line 17 of page 110 of the transcript from the September 3, 1987 EEOC hearing concerning Hearn's complaint in which McArtor had testified that he believed that Propper did have field investigatory experience, although of a different nature than Sponnick's. This conflicting testimony of McArtor further leads this court to the conclusion that field investiga-

tory experience was not a factor in McArtor's decision, but instead an after-the-fact justification.

Fourth, the FQLD used in the Merit Panel Promotion rating guide was "[s]kill in the use of investigative techniques" and contained no mention of any field investigation experience requirement. In addition, this FQLD was the only FQLD whose associated KSAO had been classified as being nonessential for the job by the subject matter experts, McArtor and Stark (Pl.Ex. 8). McArtor and Stark had classified each of the KSAOs associated with the four other FQLDs as being essential to the position (Pl.Ex. 8). Fifth, this court finds the factors which determined how many points a candidate was awarded for the FQLD relating to investigative techniques to be suspicious. The subject matter experts determined that neither the contact representative nor claims examiner positions would be considered investigative, and therefore no points would be awarded to a candidate for having worked in these positions (Def.Exh. 505). McArtor and Stark testified that they made this determination because the investigative techniques utilized by a GS–9 CR or claims examiner were different from those utilized in the GS–962–10 position.

Kemp, however, who worked with Kuehl to draft the original Position Description for the GS–962–10 position, testified that there was essentially no difference between the investigative techniques utilized by a GS–9 CR and those utilized by a GS–962–10 CR. He stated that he believed the only difference between the positions was that the GS–962–10 CR conducts some of his investigations in the field. Kemp's testimony was supported by the testimony of Peasley who had originally held a GS–9 CR position and had been promoted to the GS–962–10 position the first time it was open. This court found both Kemp's and Peasley's testimony to be credible because it was supported by the descriptions of the duties of the GS–9 and GS–962–10 CR positions provided by witnesses John Ella Latham, Anita M. Foster, Keith Thompson, and Hearn himself.

The VA argued that even if this exclusion were improper, it had no discriminatory effect upon Hearn for two reasons: (1) all six finalists were affected equally because none of them received credit for their prior experience as a contact representative and (2) this did not affect the ultimate decision because McArtor did not see nor use the point totals from the Merit Promotion rating guide in making his decision. Both of these arguments are flawed.

The "investigative skills" FQLD stated that three points, which was the maximum number of points for that FQLD, would be given to a candidate for "5 years experience in positions predominately investigative in nature" (Pl.Exh. 505). Hearn received no points under this FQLD while Sponnick received two points for the 14 months he worked as a Social Intake Worker in 1973 and 1974. If, however, contact representative and claims examiner experience had qualified as being investigative, then all the finalists would have received three points for this FQLD because of their experience (Pl.Exh. 511 at 4). This outcome would have increased Hearn's total points by three while only increasing Sponnick's total points by one, which is a net gain of two points for Hearn. Thus, all finalists were not affected equally by McArtor and Stark's decision not to give investigative credit for experience as a contact representative or claims examiner.

In addition, the classification of contact representative and claims examiner experience as being noninvestigative affected more than the Merit Promotion rating point totals. This classification provided a candidate who had "field" experience outside of the VA an advantage in the final decision-making process as evidenced by McArtor and Kuehl's testimony that Sponnick was promoted instead of Hearn because he had "field" investigative experience while Hearn did not.

Thus, consideration of the preceding five factors leads this court to the conclusion and finding that McArtor and Kuehl's claim that Sponnick was hired instead of Hearn because he had field investigative experience is not credible.

McArtor also testified that another factor in his decision was that Sponnick's personality was better suited for the position than Hearn's. He testified, however, that this was an extremely minor consideration in his final decision. Similar to Kuehl, he also referred to the incident between Hearn and Kemp involving the broken ashtray, but was unable to provide any additional examples of specific incidents which showed that Sponnick was a better choice. In fact, McArtor testified during direct examination that *he* wanted to make it clear that he was unaware of Hearn ever having any conflicts or problems with the general public while he was dealing with them on behalf of the VA.

McArtor testified that he believed there were general differences between Hearn's and Sponnick's personalities which led him to believe that Sponnick's personality was better suited for the position. McArtor also claimed that the VA promotion process permitted him to consider these general characteristic traits during the final interview stage of the selection procedure. Hearn, however, impeached this portion of McArtor's testimony by referring to "The Integrated Job Analysis System For VA Personnel Management" ("the IJAS") (Pl. Exh. 9) and "Appendix A. Development of Rating and Ranking Procedures" ("the DRRP") (Pl.Exh. 6).

Hearn first had McArtor read the section from the IJAS which discussed how KSAO's for position openings should be generated:

Before the group [subject matter experts] begins to generate KSAO's the job analyst should explain that the goal is to come up with observable KSAO's rather than [personality] traits and that specific academic requirements should be avoided.

(Pl.Exh. 9 at 21). Hearn then had McArtor read the section from the IJAS that discussed selection procedures:

Any time we [VA] select someone for initial hire *or for promotion, we are required* by the Uniform Guidelines on Employee Selection Procedures and Merit Principle 1 of the Civil Service Reform Act to base that selection on the relative degree to which applicants *possess the knowledge, skills, and abilities needed in the job being filled.*

(Pl.Exh. 9 at 2) (emphasis added). McArtor testified that he was aware of the limitation on considering personality traits, but that this did not apply to the final interview and decision. Hearn, however, then had McArtor read from the DRRP section on definitions which defines "Selection Procedure" as:

Any measure or combination of measures used as a basis for an employment decision.... Selection procedures include the full range of assessment methods such as written tests, qualification standards, scored and unscored application forms, rating and ranking plans, *and formal and informal interviews.*

(Pl.Exh. 6 at 2) (emphasis added). This impeachment was important because it confirmed the view that McArtor was searching for reasons why he chose Sponnick. In addition, Hearns' testimony regarding his nonhiring was credible and strongly reinforced the view that neither Kuehl nor McArtor were telling the entire story. Thus, this court finds that the defendant's claim that Sponnick was chosen because of Hearn's personality also is not credible.

## LEGAL CONCLUSIONS

In *Jones v. Jones Bros. Const. Corp.*, the Seventh Circuit set forth the analytical framework for a Title VII complaint. 879 F.2d 295, 299 (7th Cir.1989). This framework is identical to that which the United States Supreme Court has set out in *Texas Dept. of Community Affairs v. Burdine:*

First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons of-

fered by the defendant were not its true reasons, but were a pretext for discrimination.

450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (citations omitted).

 A plaintiff who is not promoted can usually establish a prima facie case by showing: (1) he is a member of a protected class; and (2) he was an eligible candidate for promotion; (3) he was not promoted; and (4) another candidate was promoted. *See Jones* 879 F.2d at 299. Hearn has met his burden of establishing a prima facie case of discrimination. Hearn (1) is a member of a protected class because he is an Afro–American, (2) was an eligible candidate for a promotion to the GS–962–10 CR position, (3) was not promoted to the position, and (4) another candidate was promoted to the position.

 Once a prima facie case is established, the defendant has the burden of rebutting the presumption of discrimination by producing evidence that indicates there was a nondiscriminatory reason for rejecting the employee. *Texas Dept. of Community Affairs*, 450 U.S. at 254, 101 S.Ct. at 1094. The VA met its burden of producing evidence that it had a nondiscriminatory reason for not promoting Hearn to the GS–962–10 CR position, e.g. Hearn did not have field investigatory experience while Sponnick did and Sponnick's personality was better suited for the job.

Finally, the plaintiff has the opportunity to prove by the preponderance of the evidence that the proffered reason was not the true reason for the employment decision, but instead a pretext for discrimination. The Supreme Court has held that a plaintiff can fulfill this burden of persuasion "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dept. of Community Affairs,* 450 U.S. at 256, 101 S.Ct. at 1095. The Seventh Circuit has elaborated on how a plaintiff can prove that the defendant's proffered reasons are unworthy of credence and held that this can be accomplished "by showing

(1) they have no basis in fact, or (2) they did not actually motivate the employer's decision, or (3) they were insufficient to motivate the discharge [decision]." *Jones*, 879 F.2d at 299. In addition, the Seventh Circuit has held that regardless of how a plaintiff proves the proffered reasons are unworthy of credence, he or she must also prove that discrimination was a determining factor in the defendant's decision:

> Under either means of proving pretext the employee
>
> > "need not prove that age [race] was the only factor motivating his discharge, but he must prove that age [race] was 'a determining factor,' *Smith v. Flax*, 618 F.2d 1062, 1066 (4th Cir.1980), 'in the sense that he would not have been discharged "but for" his employer's motive to discriminate against him because of his age [race].' *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1409 (7th Cir.1984."

*Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir.1988).

 Hearn has met his burden of persuading this court that the preponderance of the evidence indicates that the reasons the VA provided for not promoting him are not credible and that a discriminatory reason was a determining factor in the VA's decision. The primary two reasons which the VA has put forth for not promoting Hearn are not credible because the facts indicate that they were insufficient to differentiate legitimately between Hearn and the individual who was hired, Sponnick.

The first reason the VA provided for promoting Sponnick over Hearn was that Sponnick had field investigatory experience while Hearn did not. This court finds, however, that the facts indicate that this reason is not credible because:

(1) the person this court finds primarily responsible for the decision, Kuehl, did *not* believe there was a need to have the person who was promoted conduct field investigations, and the person who was promoted, Sponnick, never conducted a field investigation while filling the GS–962–10 CR position;

(2) the individual who McArtor considered to be the best for the position was Propper and he had no field investigative experience;

(3) the field investigatory experience Sponnick had which allegedly differentiated him from Hearn had occurred more than 10 years prior to his promotion to the GS–962–10 position and was unrelated to veterans benefits programs (Def.Exh. 511 at 7);

(4) field investigative experience was *not* included in the GS–962–10 CR position vacancy announcement as a qualification that a candidate had to have in order to be considered for the position;

(5) the related FQLD established by the subject matter experts for the GS–962–10 CR position's Merit Promotion Rating Guide did *not* refer to "field" experience and was the only FQLD whose corresponding KSAO was classified by the subject matter experts as being nonessential for the position; and,

(6) the subject matter experts determined that experience as a contact representative and claims examiner did not qualify as field investigatory experience even though these positions are primarily investigative in nature and at times require the VA employee in the position to represent the VA outside of the office.

This court also finds that the second reason the VA provided for not promoting Hearn, the claim that Sponnick's personality was better suited for the position because Hearn had a bad temper and behavioral problems, is not credible. First, the only evidence the VA produced to substantiate its claim was an incident that occurred between Hearn and his supervisor, Kemp, on February 17, 1983. The underlying reasons for the incident were not addressed by the parties, but the evidence indicated that (1) the incident was a one-time occurrence, (2) that it did *not* effect the working relationship between Hearn and Kemp, (3) that the VA concluded that it was *not* significant enough to merit a permanent reference to it in Hearn's personnel file, and (4) McArtor placed extremely little importance on this incident.

In addition, both McArtor and Kuehl testified that they were aware of no other incidents or complaints regarding Hearn's personality or temper, and that Hearn's personnel file was *not* indicative of an employee with a behavioral problem. Finally, there was no KSAO or FQLD created by the subject matter experts to evaluate a candidate's personality, and the VA's guidelines for promoting employees did not permit McArtor and Kuehl to consider personality traits when making a promotion decision unless the traits were broken down into directly observable behaviors that could be measured using a content valid methodology.

The only other reason the VA provided for promoting Sponnick over Hearn was presented during the testimony of Kuehl when Kuehl claimed that Sponnick's education was one of the reasons he recommended Sponnick over Hearn. As noted earlier, this court finds this portion of Kuehl's testimony not credible because there is no evidence that suggests he compared Sponnick's education to Hearn's and it appeared to this court that Kuehl was merely searching for justifications for selecting Sponnick after the fact. Thus, this court finds that the preponderance of the evidence indicates that all of the reasons the VA provided for not promoting Hearn are not credible.

Hearn, however, also has to prove by the preponderance of the evidence that his race was a determining factor in the VA's decision not to promote him. This element of proof is the most difficult because employers rarely, if ever, state that race, sex, or age is a motivating factor in *not* selecting an individual for a position. There is no doubt, however, that these factors still enter into employment decisions. In the present case, Hearn has provided no evidence that anyone associated with his not being promoted ever stated that Hearn was not being promoted because he is an Afro–American. Hearn, however, did prove that the preponderance of the evidence leads to the conclusion that his race was a determining factor in the VA's employment decision.

First, Hearn persuaded this court that the preponderance of the evidence indicates that the reasons the VA have proffered for not promoting him are not credible. This conclusion in and of itself creates the inference that Hearn's race was a determining factor in the VA's decision. Second, this inference was strongly supported by the general demeanor of McArtor and Kuehl as witnesses. This court had the impression throughout their testimony that the full story was not being told, and that these witnesses, particularly Kuehl, were reaching for answers. This strong impression combined with the general inference created from the VA's proffered reasons being pretextual leads this court to conclude that Hearn's race was a determining factor in his not being promoted to the GS–962–10 CR position.

IT IS THEREFORE ORDERED that the Veterans Administration retroactively promote Tyrone K. Hearn to the GS–962–10 Contact Representative position, or a substantially equivalent position that is acceptable to Hearn. The retroactive promotion's effective date shall be the day upon which Sponnick officially became a GS–962–10 Contact Representative in July of 1985.

IT IS FURTHER ORDERED that the Veterans Administration pay to Tyrone K. Hearn the difference between what he would have earned as a GS–962–10 Contact Representative had he been promoted to this position in July of 1985 and what he has earned as a GS–9 Contact Representative since that time.

IT IS FURTHER ORDERED that the Veterans Administration provide Tyrone K. Hearn with any other related benefits of employment, e.g. seniority, vacation, etc., that Hearn would have received had he been promoted in July of 1985.

IT IS FURTHER ORDERED that both the Veterans Administration and Tyrone K. Hearn shall submit to this court within thirty days of this order their positions on:

(1) the position the Veterans Administration will or should offer Hearn to compensate him for his nonpromotion in July 1985;

(2) the dollar difference between a) what Hearn earned as a GS–9 Contact Representative from July 1985 until the day he is promoted to a GS–962–10 Contact Representative or comparable position and b) what he would have earned as a GS–962–10 Contact Representative during that identical time period; and

(3) a list of any other related benefits Hearn would have received had he been promoted in July 1985.