748 F.Supp. 686 (1990)
Katherine KING, Plaintiff,
v.
BOARD OF REGENTS OF the UNIVERSITY OF WISCONSIN SYSTEM; University of Wisconsin-Milwaukee; Frederick W. Pairent, individually, and in his official capacity as Dean of the School of Allied Health Professions, University of Wisconsin-Milwaukee; Franklin Stein, individually, and in his official capacities as a faculty member and Director of the Occupational Therapy Program, Health Sciences Department, School of Allied Health Professions, University of Wisconsin-Milwaukee; Stephen A. Sonstein, individually, and in his official capacities as a faculty member, Assistant Dean, and member and Chairperson of the Executive Committee of the Health Sciences Department, School of Allied Health Professions, University of Wisconsin-Milwaukee; and James J. McPherson, individually, and in his official capacity as a faculty member of the Health Sciences Department, School of Allied Health Professions, University of Wisconsin-Milwaukee, Defendants.
Civ. A. No. 85-C-718.
United States District Court, E.D. Wisconsin.
October 4, 1990.
*687 Walter F. Kelly, Sutton & Kelly, Thomas M. Domer, Schneidman Myers Dowling & Blumenfield, Milwaukee, Wis., for plaintiff.
Nadim Sahar, Asst. Atty. Gen., Wisconsin Dept. of Justice, Milwaukee, Wis., for defendants.

DECISION AND ORDER
REYNOLDS, Senior District Judge.

FACTS
During April 1987, a three-week jury trial was conducted in the above-captioned case in which plaintiff Katherine King ("King") obtained a favorable special verdict against four of the six defendants. The jury awarded King $345,000 in damages.
On November 21, 1988, this court granted in part and denied in part defendants' motion for judgment notwithstanding the verdict ("JNOV"). This court granted JNOV on each of King's claims against the *688 defendants except her sexual harassment claim against defendant Stephen A. Sonstein ("Sonstein"). This court then awarded King $60,000 in compensatory damages against Sonstein, the Board of Regents of the University of Wisconsin System, and the University of Wisconsin-Milwaukee. This court also awarded King $30,000 in punitive damages against Sonstein. Finally, pursuant to Title 42 U.S.C. § 1988 this court awarded King her reasonable attorney's fees for the claim on which she prevailed. On January 27, 1989, this court amended the judgment in King's action to state that the defendant University of Wisconsin System Board of Regents shall indemnify the entire $90,000 judgment.
King and the defendants appealed this court's November 21, 1988 order. On March 22, 1990, the Seventh Circuit Court of Appeals, 898 F.2d 533 affirmed this court's decision on all counts. The only remaining issue in this case is the attorney's fees which King is entitled to.
On February 6, 1989, King's attorneys, Walter F. Kelly ("Kelly") and Thomas M. Domer ("Domer"), submitted an itemized accounting of the fees and costs expended on King's successful sexual harassment claim against Sonstein. In his affidavit, Kelly stated: (1) that Kelly had worked 1,419.2 total hours on King's case; (2) that Kelly had worked 990 hours at a rate of $200 per hour on King's successful claim against Sonstein; (3) that Domer worked 257.2 hours at a rate of $120 per hour and 31.8 hours at a rate of $125 per hour on King's successful claim against Sonstein; (4) that the total lodestar fee (hours worked multiplied by the hourly rate) for King's successful claim is $233,039 which is comprised of Kelly's lodestar of $198,200 and Domer's lodestar of $34,839; (5) that this court should enhance the total lodestar fee by a multiplier of 1.5 bringing the total attorney's fee award to $349,558.50; (6) that the costs and disbursements of Kelly's and Domer's law firm were $6,344.51 and $2,342.69 respectively for a total of $8,687.20; and (7) that the total fees and costs King is entitled to is $358,245.70 (Feb. 3, 1989 Kelly Aff. ¶¶ 12-13).
On May 18, 1989, the defendants filed a brief in opposition to King's petition for attorney's fees in which they argued that "the attorney's fees sought by the plaintiff are excessive, unsupported by the evidence and contrary to every legal approach to the determination of a reasonable attorney's fee." (May 18, 1989 Brief in Opp. at 2). Specifically, defendants claim that: (1) King is not entitled to any multiplier or enhancement of the lodestar fee; (2) King can recover only the attorney's fees associated with the litigation of the sexual harassment claim against Sonstein; (3) there must be some proportionality between the attorney's fee award and King's damage recovery of $90,000; (4) the hourly rate Kelly and Doman used to calculate the lodestar fee exceed the prevailing rates in the Milwaukee, Wisconsin, community; (5) King can recover only those expenses associated with her successful sexual harassment claim against Sonstein; and (6) King cannot recover the costs of her expert witnesses which are in excess of the statutory costs provided in 28 U.S.C. § 1821.

ANALYSIS

I. THE LODESTAR FEE
Title 42 U.S.C. § 1988 states that:
In any action or proceeding to enforce a provision of sections 1977, 1978, 1979, 1980, and 1981 of the Revised Statutes [42 USC §§ 1981-1983, 1985, 1986], ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
The United States Supreme Court has often considered the meaning of the term "reasonable attorney's fee" and has repeatedly held that:
"[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." This figure, commonly referred to as the "lodestar," is presumed to be the reasonable fee contemplated by § 1988.
City of Riverside v. Rivera, 477 U.S. 561, 568, 106 S.Ct. 2686, 2691, 91 L.Ed.2d 466 *689 (1986) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)). The Court has also repeatedly stated that when the fee applicant has carried his burden of proving that the number of hours and the hourly rate are reasonable, then the lodestar amount is presumed to be a reasonable fee. Blanchard v. Bergeron, 489 U.S. 87, 109 S.Ct. 939, 945, 103 L.Ed.2d 67 (1989); Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 564, 106 S.Ct. 3088, 3097, 92 L.Ed.2d 439 (1986). In the present case, however, the defendants have argued that both the number of hours and the rates claimed by King are excessive.

A. The Allowable Number of Hours
The defendants argue that the number of hours claimed by King are excessive because they represent approximately seventy-five (75%) percent of the total number of hours worked on King's case even though King only prevailed on one (1) of twenty (20) claims against one (1) of five (5) defendants. The defendants argue that this court should only award King's attorneys twenty (20%) percent of the total hours they worked because King only prevailed against twenty (20%) percent of the defendants.
The Supreme Court and Seventh Circuit Court of Appeals have rejected the use of a mechanical claim-chopping approach in determining the number of hours allowable under a § 1988 attorney's fee request. Hensley v. Eckerhart, 461 U.S. 424, 436 n. 11, 103 S.Ct. 1933, 1941 n. 11, 76 L.Ed.2d 40 (1983); Lenard v. Argento, 808 F.2d 1242, 1245 (7th Cir.1987). The Supreme Court has stated that in situations where a plaintiff prevails on only a few of many claims, the district court should utilize a two-step inquiry in determining the allowable hours. The district court should determine 1) whether or not the successful and unsuccessful claims were related and 2) did the degree of success obtained by the plaintiff justify the hours on the unsuccessful but related claims. Hensley, 461 U.S. at 434, 103 S.Ct. at 1939. If the unsuccessful claims are unrelated to the successful ones, then "these unrelated claims [must] be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." Id. at 435, 103 S.Ct. at 1940.
King prevailed on a sexual harassment claim against Sonstein and lost on the following claims: 1) sex discrimination against defendants Sonstein, Franklin Stein ("Stein"), James J. McPherson ("McPherson"), Frederick W. Pairent ("Pairent"), and the University of Wisconsin at Milwaukee ("UWM"); 2) free speech retaliation against Sonstein, Stein, McPherson, and Pairent; 3) deprivation of property without due process against Stein, McPherson, Pairent, and UWM; 4) defamation/deprivation of liberty interest against McPherson, Pairent, and UWM; 5) failure to protect from sexual harassment against Pairent and UWM; and 6) sexual harassment against UWM. This court finds that of these claims, the following were unrelated to King's sexual harassment claim against Sonstein because they did not involve similar facts or legal theories: 1) the free speech retaliation claim against all the defendants accept Sonstein; 2) the deprivation of property without due process against defendants Stein, McPherson, Pairent, and UWM; and 3) the defamation/deprivation of liberty claim against defendants McPherson, Pairent, and UWM. Thus, the hours which King's attorneys worked on these claims are not allowed to be included in calculating the lodestar fee.
King's attorneys have provided to this court two itemized lists of all the hours they spent on King's claims. These lists, however, do not describe the hours spent by the attorneys on each of the separate claims. Thus, this court cannot determine from the lists how many hours apply to claims related to the sexual harassment claim against Sonstein.
This court, however, can determine the number of hours which should be used in calculating the lodestar fee. King's attorneys claim that they utilized the Supreme Court's "relatedness" test to determine the number of hours which they were allowed to include in calculating the lodestar fee (Feb. 3, 1989 Kelly Aff. ¶ 8). This court is *690 convinced from reviewing the itemized lists that King's attorneys made a good faith effort to include in the lodestar calculation only those hours which related to King's sexual harassment claim against Sonstein. Thus, this court will accept King's attorneys' claim that they worked 1,279 hours on either King's sexual harassment claim against Sonstein or other related claims.
The 1,279 hours worked, however, does not satisfy the second part of the Supreme Court's test which requires this court to inquire as to whether or not "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for a fee award?" Hensley, 461 U.S. at 434, 103 S.Ct. at 1940. The level of success King achieved in her case does not justify her being reimbursed for seventy-five (75%) percent of the hours her attorneys worked on the case. King's primary claim was that she was discriminated against by the defendants because of her sex. Although King's sexual harassment claim against Sonstein was related to her discrimination claim, it was not the focus of her complaint or trial, and her prevailing on only this claim is not a major success. Thus, the 1,279 hours requested by King is not a satisfactory or reasonable basis for determining King's attorney's fee.
This court finds that King's limited success requires that she be reimbursed for sixty-five (65%) percent of the 1,279 total hours which her attorneys have submitted as the reasonable hours spent on her prevailing claim. This percentage equals 831.35 allowable hours which represents approximately forty-nine (49%) percent of the total number of hours worked on all claims, 1,708.2. This court finds that 831.35 hours is appropriate and accurately reflects the degree of success which King obtained. Hensley, 461 U.S. at 436, 103 S.Ct. at 1941.
In addition, the 831.35 allowable hours is divided between King's two attorneys to reflect the relative time each spent on claims related to her successful sexual harassment claim against Sonstein. Accordingly, attorney Kelly has 643.5 allowable hours and attorney Domer has 187.85 allowable hours.

B. The Hourly Rate
The defendants also have argued that the $200 hourly rate King has requested for attorney Kelly, and the $120 and $125 hourly rates requested for attorney Domer exceed the prevailing rates in the Milwaukee community. The defendants argue that historical hourly rates should be applied to the work Kelly performed during the 1983-1987 time period, and that a general hourly rate of $100 should be utilized for both Kelly and Domer for all time periods.
First, the Supreme Court has held that the market rate existing at the time of the attorney's fee award is an appropriate rate to be used in calculating the lodestar fee because it compensates the attorney for the delay in payment. The Court in Missouri v. Jenkins stated:
Clearly, compensation received several years after the services were rendered  as it frequently is in complex civil rights litigation  is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case in private billings. We agree, therefore, that an appropriate adjustment for delay in payment  whether by the application of current rather than historic hourly rates or otherwise  is within the contemplation of the statute.

491 U.S. 274, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (emphasis added). Second, the Court has repeatedly held that attorney's fees awarded under § 1988 are to be based on market rates for the services rendered. Missouri v. Jenkins, 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989); Blanchard, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989); Riverside, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986). Thus, this court will utilize the current market rate in Milwaukee in awarding attorney's fees to King in order to compensate King's attorneys for the delay in payment in this case.
The Seventh Circuit Court of Appeals has held that the best evidence of the appropriate hourly rate to be used in calculating *691 the lodestar amount for an attorney with fee-paying clients "is the hourly rate customarily charged by counsel or by her law firm." Tomazzoli v. Sheedy, 804 F.2d 93, 98 (7th Cir.1986). Kelly states in his affidavit that his hourly billing rate as of February 1989 was $200 per hour, and that the prevailing market rate for a civil rights attorney with his experience in Milwaukee also was $200 per hour at that time (Feb. 3, 1989 Kelly Aff. at ¶ 9). Kelly also submitted affidavits of attorneys involved in similar civil rights litigation in Milwaukee to support his $200 hourly rate. In addition, Domer states in his affidavit that his hourly rate was $120 in 1985, 1986, and 1987 and $125 in 1988 and 1989.
The defendants, however, claim that Kelly's hourly rate of $200 exceeds the Milwaukee market rate for civil rights attorneys. The defendants, however, did not file any affidavits to refute Kelly's or Domer's claims that their billing rates were $200 and $125 per hour in 1989. This court has reviewed the evidence filed by the parties and finds that the hourly rates submitted by Kelly and Domer are slightly high for the early 1989 time period. The affidavits submitted by Kelly support an hourly range of $170 to $200 for his services and an hourly range of $90 to $125 for Domer's services. These ranges, however, have certainly increased since early 1989. Thus, this court concludes that a current hourly rate of $200 for Kelly and $125 for Domer is reasonable and appropriate in order to compensate for the lengthy delay in payment.

C. Calculating the Lodestar
As discussed earlier, the lodestar fee is determined by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. In the present case, this court has found that attorney Kelly reasonably expended 643.5 hours and attorney Domer reasonably expended 187.85 hours. In addition, this court has found that $200 is the reasonable hourly rate for attorney Kelly and $125 is the reasonable hourly rate for attorney Domer. Thus, the lodestar fee for attorneys Kelly and Domer are $128,700 and $23,481.25 respectively, which equals a total lodestar fee of $152,181.25.

D. The Multiplier
King has requested that the lodestar fee be enhanced by fifty (50%) percent. The Supreme Court in Blum v. Stenson greatly limited the circumstances in which the lodestar fee can be enhanced. 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). The Court held that the "novelty and complexity of the issues" and "the special skill and experience of counsel" are reflected in the lodestar fee, and therefore cannot be used as a basis for enhancement. Id. at 898-99, 104 S.Ct. at 1549 (1984). In addition, the Court held that although the "quality of representation" and the results obtained by counsel are generally reflected in the lodestar fee, these two factors can be used to adjust the lodestar fee upwards "only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was `exceptional.'" Id. at 899, 104 S.Ct. at 1549 (citing Hensley, 461 U.S. at 435, 103 S.Ct. at 1940).
First, this court finds that the quality of representation King's attorneys provided to her was excellent. Second, this court also finds that had it not been for the excellent quality of her attorneys she probably would not have prevailed on any claims, and therefore the results obtained were exceptional. Finally, this court finds that although the attorneys were excellent and the outcome was exceptional given the specific facts of the case, the outcome was not exceptional when one considers the hourly rate this court has awarded to King's lead attorney. The $200 hourly rate awarded for attorney Kelly is a premium rate for Milwaukee and accurately reflects the excellent representation he provided and the exceptional result he obtained. Thus, King's lodestar fee cannot be enhanced based on these factors.
King, however, argues that the lodestar should be enhanced because without *692 this enhancement, prospective civil rights plaintiffs in Milwaukee would have a difficult time retaining an attorney. King claims that this consideration justifies the enhancement of the lodestar and cites the Supreme Court's decision in Pennsylvania v. Delaware Valley Citizens' Council for Clean Air as support for her claim. 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987). The issue before the Court in Delaware Valley was "whether, when a plaintiff prevails, its attorney should or may be awarded separate compensation for assuming the risk of not being paid." Id. at 715, 107 S.Ct. at 3081. Although the federal statute permitting the fee award in Delaware Valley was 42 U.S.C. § 7604(d), the Court also considered § 1988 when deciding the case. 483 U.S. at 713, 723, 107 S.Ct. at 3080, 3085.
The Supreme Court's decision in Delaware Valley is not a conclusive holding on the question of whether or not a lodestar enhancement for risk assumption is permissible. Four of the five Justices who joined in the majority opinion concluded "that multipliers or other enhancement of a reasonable lodestar fee to compensate for assuming the risk of loss is impermissible under the usual fee-shifting statutes." Delaware Valley, 483 U.S. at 727, 107 S.Ct. at 3087 (emphasis added). Justice O'Connor, however, who was the fifth Justice concurring in the judgment of the majority, did not agree with this portion of the majority decision. Thus, the majority proceeded with its analysis and held that:
Even if § 304(d) and other typical fee-shifting statutes [§ 1988] are construed to permit supplementing the lodestar in appropriate cases by paying counsel for assuming the risk of nonpayment, for the reasons set out below, it was error to do so in this case.
Id. at 728, 107 S.Ct. at 3087-3088.
Justice O'Connor only concurred in part with the four Justices in the majority because she concluded:
that Congress did not intend to foreclose consideration of contingency in setting a reasonable fee under fee-shifting provisions such as ... the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988. I also agree that compensation must be based on the difference in market treatment of contingent fee cases as a class, rather than on an assessment of the "riskiness" of any particular case.
Id. at 731, 107 S.Ct. at 3089. In addition, the four Justices who dissented also concluded that an enhancement of the lodestar to account for risk assumption is permissible. Id. at 735-55, 107 S.Ct. at 3091-3102. Thus, five of the nine Justices believed that § 1988 permits an enhancement of the lodestar for risk assumption.
The Seventh Circuit Court of Appeals has considered the Court's holding on risk enhancement in Delaware Valley and has stated that Justice O'Connor's concurring opinion represents a majority. The Seventh Circuit in Skelton v. General Motors Corp. stated:
Justice O'Connor agreed with part of the reasoning of the four-vote plurality and with some of the arguments offered by the four-vote dissent. Her position on risk multipliers thus represents the position of a majority of the Court. Justice O'Connor agreed with the plurality that "no enhancement for risk is appropriate unless the applicant can establish that without an adjustment for risk the prevailing party `would have faced substantial difficulties in finding counsel in the local or other relevant market.'" Justice O'Connor also observed that "`legal' risks or risks peculiar to the case" are not sufficient to warrant an enhancement of the lodestar. Thus, Justice O'Connor agreed with the dissent that "compensation for contingency must be based on the difference of contingent fee cases as a class, rather than on an assessment of the `riskiness' of any particular case."
860 F.2d 250, 254 n. 3 (1988) cert. denied, ___ U.S. ___, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989) (quoting Delaware Valley, 483 U.S. 711, 733-34, 107 S.Ct. 3078, 3090-91, 97 L.Ed.2d 585.)
King has argued that in light of the Delaware Valley and Skelton holdings, the relevant question in her case is whether or not a potential plaintiff in a civil rights or *693 employment discrimination case in the Milwaukee market would have substantial difficulty finding an attorney if there were no risk enhancement of the lodestar fee. This court agrees.
King has submitted the affidavits of civil rights plaintiffs attorneys Robert Dowling ("Dowling"), Thomas Jacobson ("Jacobson"), and Curry First ("First") to support her claim that without a risk enhancement a prospective civil rights plaintiff would have a difficult time retaining an attorney. Dowling, Jacobson, and First each state that their legal practice would not be economically viable without an enhancement of the lodestar fee (June 19, 1989 Dowling Aff. ¶¶ 4-5; June 19, 1989 Jacobson Aff. ¶¶ 6-10; June 19, 1989 First Aff. ¶¶ 9-10). The defendants have submitted no evidence to refute King or these attorneys' claims.
In addition, during the last twelve (12) months, this court has had a civil rights case in which the plaintiff proceeded pro se because he could not retain competent counsel on a contingency basis even though he had a claim which ultimately was successful (Hearn v. Turnage, 747 F.Supp. 1318 (E.D.Wis.1990)). Finally, this court notes that an attorney's fee award inevitably appears greater than it actually is because the attorney's overhead costs must be paid from the award. Thus, in the present case, King's attorney's salary will not equal the attorney's fee award because he must pay his overhead costs from that award.
This court, however, is not convinced that an enhancement of fifty (50%) percent is required to attract competent counsel to engage in civil rights plaintiff work in Milwaukee. Instead, based on the evidence provided by King in this case and this court's experience in the Milwaukee market, this court finds that an enhancement of twenty-five (25%) percent is the appropriate multiplier. This enhancement increases the attorney's fee award in the present case to $190,226.56.

E. The Proportionality between Fees and Damages
The defendants have argued that there must be some proportionality between the client's monetary recovery and the attorney's fee award, and therefore King's attorney's fee request cannot exceed her total damages award of $90,000. This argument is incorrect as a matter of law because the United States Supreme Court has held that "[i]n the absence of any indication that Congress intended to adopt a strict rule that attorney's fees under § 1988 be proportionate to damages recovered, we decline to adopt such a rule ourselves." Riverside, 477 U.S. at 581, 106 S.Ct. at 2697 (emphasis added). Thus, King's attorney's fee award is not limited to her damages of $90,000.

II. EXPENSES
The defendants argue that King's request for expenses is excessive because it includes 1) costs that are unrelated to her sexual harassment claim against Sonstein and 2) expert witness fees which are in excess of the statutory costs permitted by 28 U.S.C. § 1821. Specifically, defendants argue that the depositions of Pairent, Stein, McPherson, and Lizette Kautzman ("Kautzman") were unrelated to King's successful claim, and therefore the costs associated with them should be denied.
The Seventh Circuit Court of Appeals has held that:
In ascertaining what is an appropriate expense award, the district court must exercise its discretion to "disallow particular expenses that are unreasonable whether because excessive in amount or because they should not have been incurred at all."
Zabkowicz v. West Bend Co., Div. Dart Industries, Inc., 789 F.2d 540, 553 (7th Cir.1986) (quoting Henry v. Webermeier, 738 F.2d 188, 192 (7th Cir.1984)). This court already has found that King's sex discrimination claim against defendants Pairent, Stein, and McPherson were related to her sexual harassment claim against Sonstein, and therefore the depositions of these defendants and Kautzman were reasonable.
There is, however, a split in the federal circuit courts as to whether or not *694 § 1988 permits a court to award expert witness fees in excess of the thirty dollar daily limit provided by 28 U.S.C. § 1821(b). The Third Circuit Court of Appeals has recently considered the different circuits holdings on this issue and concluded that under the Supreme Court case of Crawford Fitting Co. v. J.T. Gibbons, Inc., "section 1988 as presently drafted does not authorize expert fee awards in excess of the statutory cap of thirty dollars per day provided in section 1821(b)." West Virginia Univ. Hospitals, Inc. v. Casey, 885 F.2d 11, 35 (3rd Cir.1989), cert. granted, ___ U.S. ___, 110 S.Ct. 1294, 108 L.Ed.2d 472 (1990) (referring to Crawford Fitting, 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987)). In reaching its decision, however, the Third Circuit noted that:
Justice Blackmun, concurring in Crawford Fitting, and Justices Marshall and Brennan, dissenting, all emphasized that the Court in that case did not reach the question whether a court may award excess expert witness fees under section 1988.
Casey, 885 F.2d at 33 (citing Crawford Fitting, 482 U.S. at 445, 446 n. 1, 107 S.Ct. at 2499, 2500 n. 1). In addition, the Third Circuit also noted that:
Indeed, a number of courts examining the question raised here have concluded that Crawford Fitting does not limit expert witness fee awards under section 1988 to the rate set in section 1821(b).
Id. at 34 (footnote omitted).
The Seventh Circuit Court of Appeals, however, has evaluated the expert witness fee question in light of the Crawford Fitting decision, and has held that § 1821(b) does not limit the expert witness fees recoverable under § 1988 to thirty dollars a day. Friedrich v. City of Chicago, 888 F.2d 511 (7th Cir.1989), petition for cert. filed (Jan. 29, 1990) (No. 89-1230). The Seventh Circuit's decision in Friedrich essentially upheld an earlier decision where it held:
that expenses of litigation that are distinct from either statutory costs or the costs of the lawyer's time reflected in his hourly billing rates  expenses for such things as postage, long-distance calls, xeroxing, travel, paralegal, and expert witnesses  are part of the reasonable attorney's fee allowed by the Civil Rights Attorney's Fees Awards Act.

Heiar v. Crawford County, Wis., 746 F.2d 1190, 1203 (7th Cir.1984) (emphasis added) (citing Henry v. Webermeier, 738 F.2d 188, 191-92 (7th Cir.1984)). In essence, the Seventh Circuit has avoided the fee limitations of § 1821(b) by considering expert witness fees to be part of the attorney's fee.
Although there is a split in the circuits, the Seventh Circuit's Friedrich decision is controlling law in this circuit. Accordingly, this court holds that in a § 1988 attorney's fee award, § 1821(b) does not limit the expert witness fee to thirty dollars a day.
This court, however, must also determine if the expert witness fees were related to King's successful claim against Sonstein and if they were reasonable. First, the expert witness fees were all paid to doctors whose testimony was related to the damage King suffered as a result of the defendants' actions, including Sonstein's sexual harassment. Thus, the expert testimony was related to King's successful claim.
Second, this court has reviewed the fee charged by each expert witness and finds each to be reasonable. In addition, this court has reviewed the other expenses requested by King and finds that they also are reasonable and justifiably incurred. Thus, this court grants in full King's request for expenses totaling $8,687.20.
IT IS THEREFORE ORDERED that on or before forty-five (45) days from the date of this order, the defendants in this action shall pay to plaintiff Katherine King pursuant to Title 42 U.S.C. § 1988 an attorney's fee award of $190,226.56 and costs associated with this award of $8,687.20 for a total payment of $198,913.76.