898 F.2d 533
 52 Fair Empl.Prac.Cas. 809,
53 Empl. Prac. Dec. P 39,770, 58 USLW 2635,
59 Ed. Law Rep. 335
 Katherine KING, Plaintiff-Appellee, Cross-Appellant,
v.
BOARD OF REGENTS OF the UNIVERSITY OF WISCONSIN SYSTEM,
University of Wisconsin-Milwaukee, Stephen A.
Sonstein and Franklin Stein,
Defendants-Appellants, Cross-Appellees.
 Nos. 88-3481, 88-3482, 89-1381 and 89-1477.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 14, 1989.
Decided March 22, 1990.
As Amended March 22, 1990.
Rehearing and Rehearing En Banc Denied April 23, 1990.
 
 Walter Kelly, Sutton & Kelly, Milwaukee, Wis., for plaintiff-appellee, cross-appellant.
 Nadim Sahar, Asst. Atty. Gen., Wisconsin Dept. of Justice, Michael D. Schuman, Sodos, Schuman & Pieper, Milwaukee, Wis., for defendants-appellants, cross-appellees.
 Before CUMMINGS, FLAUM and MANION, Circuit Judges.
 FLAUM, Circuit Judge.
 
 
 1
 This is a sex discrimination case against the University of Wisconsin-Milwaukee (UWM) and several of its employees filed by a tenure-track professor who was denied contract renewal. The suit was filed under both 42 U.S.C. Sec. 1983 and Title VII of the Civil Rights Act of 1964. A jury issued a special verdict under Sec. 1983, finding discrimination, harassment, and retaliation by three employees of UWM and vicarious liability of UWM. The district court granted judgment n.o.v. for all the defendants except Stephen Sonstein, a tenured professor at UWM. The district court also made parallel findings on the Title VII claim. Sonstein appeals the verdict against him and King cross-appeals the judgments n.o.v. We affirm on all counts.
 
 I.
 
 2
 Katherine King was hired in 1980 as an assistant professor of occupational therapy at the School of Allied Health Professions at UWM. Her appointment consisted of a three-year term, renewable for a second three-year term, renewable again for either a tenured career appointment or a one-year, terminal appointment. Her contract was renewed for the second three-year term, but a unanimous committee voted not to renew her contract for a seventh year. Subsequent to her non-renewal, King brought this suit alleging that during her employment at UWM, various members of the faculty sexually harassed or otherwise sexually discriminated against her and that UWM is vicariously liable for their actions. Only the claims against two members of the faculty at UWM, Steven Sonstein and Franklin Stein, are appealed.
 
 
 3
 Steven Sonstein served as Assistant Dean and tenured member of the faculty in the School of Allied Health Professions. During the fall term of 1980, Sonstein, acting as Assistant Dean, approached King and discussed with her various problems faced by new professors and various aspects of the operation of the program. As the fall term of 1980 proceeded, King became concerned because Sonstein began making suggestive innuendos as well as leering at her in a sexually suggestive fashion. In October and November of 1980, Sonstein became progressively more bold and offensive with respect to his sexual behavior toward King. He repeatedly leered at King and would from time to time touch her, rub up against her, place objects between her legs, make suggestive remarks and comment upon various parts of her body. Sonstein's behavior was blatant enough for other faculty members to notice and comment upon. King eventually requested that Sonstein stop treating her as he was, but he ignored these requests.
 
 
 4
 In late December of 1980, King attended the department's annual Christmas party. During the party, King went into the bathroom and Sonstein followed her in. He told King that he "had to have her" and that "he would have her." King protested but Sonstein forcibly kissed and fondled her. Eventually, King's boyfriend entered the bathroom and Sonstein relented. After King left the party, Sonstein directed similar behavior towards other women, despite requests that he stop.
 
 
 5
 After this incident, King discussed the problem with Sonstein and during the next year and three months he refrained from touching her. Then, in February, 1982, Sonstein falsely accused King of using UWM's photocopying equipment for personal use. This accusation was quite serious and was made shortly before King's contract renewal hearing. She was eventually cleared of the charges, and her contract was renewed. King, by then, had filed a sexual harassment charge against Sonstein with the UWM office for Equal Opportunity and Affirmative Action. This charge was pursued until a settlement was reached. As part of the resolution of this charge, Sonstein abstained from voting on matters relating to King's appointment.
 
 
 6
 King also made allegations against Professor Franklin Stein, the Director of the Occupational Therapy Program. The facts in this allegation, as in many claims of subtle discrimination, were much more nebulous. King argued that Stein subjected her to salary and workload disparities, unprecedented student evaluations, and poor appraisals. In addition, King argued that Stein mistreated her at faculty meetings, limited her research time, and wrongfully interfered in the tenure process. King supported these allegations with a variety of incidents occurring over the six year period she was with UWM. For example, she argued that Stein attempted to limit her research time and increase her workload by trying to de-fund her "grant buy-out" time, which is research time created by receiving a grant to pay for a substitute to fulfill the teaching load. As a result of Stein's actions, King prepared a grievance to present to the departmental Executive Committee. Before submitting her grievance, King attempted to have Stein removed from the Committee that would hear the grievance. The Committee, however, refused to remove Stein until it could examine the nature and seriousness of the grievance. It did not, however, indicate that if the grievance was potentially serious, that Stein would not be removed from consideration of the grievance. Eventually the grievance was submitted to the University's Faculty Rights & Responsibilities Committee which found that King failed to present sufficient evidence to establish a viable claim.
 
 
 7
 King also alleged that Stein interfered with the contract renewal process. King had decided, for health reasons, that she did not wish to undergo renewal evaluations during her seventh year. She asked to go on a leave of absence with pay for the year and for a stay of the tenure clock. Stein refused on the basis that UWM had never before granted leave with pay. He maintained that standard UWM policy was only to allow leaves of absence without pay. King alleged that Stein's denial was motivated by sexual animus in that he could have created a special exception for her. She eventually refused to take the offered leave without pay, and thus came up for contract renewal. King's health problems prevented her from appearing at her scheduled consideration for renewal, so she submitted her candidacy on the basis of her record. Stein was chosen to present her materials in her absence because he was the person on the faculty most familiar with her work. King objected to his appointment as her presenter because she felt that he would sexually discriminate against her by not presenting her material in its best light.
 
 
 8
 When the decision came to vote on her contract renewal, Stein, along with a unanimous committee, voted not to renew her contract on the basis of lack of endeavor in the area of scholarly publications, lack of commitment in presenting theoretical, clinical or research papers, inability to make use of research time, and a lack of activity in professional associations. In short, the Committee found that King had wholly failed to meet the expectations made of faculty members, whether it was because of discriminatory treatment or her own failings. As a result, her contract was not renewed.
 
 
 9
 King raised a variety of legal claims based on these facts. She sued under both 42 U.S.C. Sec. 1983 and Title VII, claiming environmental sexual harassment, sexual discrimination, retaliation in the exercise of protected rights, and deprivation of a property interest without due process of law. These claims were made against Sonstein, Stein, UWM and two other members of the faculty. The case was tried to a jury on the section 1983 counts and simultaneously to the judge on the Title VII claims. The jury found, in a special verdict, that Sonstein subjected her to sexual harassment, sexual discrimination, and retaliation and that Stein subjected her to sexual discrimination, retaliation, and deprivation of a property interest without due process. In addition, it found UWM liable for sexual discrimination, deprivation of a property interest without due process and failure to protect her from sexual discrimination, and it found two other members of the department liable for discrimination. The jury awarded $65,000 for past compensation and benefits, $150,000 for loss of future earning capacity, and $60,000 in pain and suffering, with these amounts not allocated among the individual defendants. In addition, the jury awarded punitive damages of $30,000 against Sonstein and $40,000 against Stein.
 
 
 10
 The defendants moved for judgment n.o.v. or in the alternative, a new trial. They claimed that there was no evidence of discrimination or retaliation in the record, no property interest in contract renewal, and no harassment based on sex. The district court largely agreed and granted the defendants' motion for judgment n.o.v. on all of the counts except the harassment claim against Sonstein. With respect to discrimination, the court held that King was not subject to salary or workload disparities, discriminatory treatment with respect to grant buy-out time, or discrimination in the tenure/contract renewal process.
 
 
 11
 As to the retaliatory actions, the district court found that Sonstein did not partake in any vote or action taken against King, as per the agreement resulting from the EEO charge, and that Stein's decision to vote against her contract renewal was motivated solely by her lack of professional achievements. It also found that King had no property interest in the renewal of her contract, via Board of Regents v. Roth, 408 U.S. 564, 578, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). It dismissed her claims against the other two individuals, and found that the eleventh amendment immunized UWM from suit under section 1983. Finally, the district court found that because King had been discharged for legitimate reasons and not for reasons relating to her sexual harassment claims, the jury's award for back pay and loss of future earnings were not substantiated. The damages were accordingly reduced to pain and suffering ($60,000) and punitive damages ($30,000) against Sonstein. Parallel findings were made under King's Title VII claim and no additional damages were awarded.
 
 II.
 
 12
 On appeal, King alleges sexual discrimination based on disparate treatment, environmental sexual harassment, retaliation resulting from her complaints of this treatment, and deprivation of a property interest without due process. She makes these claims against both Stein and Sonstein under both Title VII and section 1983. As the applicable law for both Stein and Sonstein is largely the same, we begin with a review of the established law governing both these claims.
 
 
 13
 King's claims of workload and salary disparaties, lack of guidance, and unequal treatment during the tenure/contract renewal process all fall under the disparate treatment analysis of Title VII. Title VII makes it illegal for employers "to discriminate against any individual ... because of such individual's ... sex." 42 U.S.C. Sec. 2000e-2(a)(1). To be actionable, claims of disparate treatment must affect the terms or conditions of employment. Id. Proof of disparate treatment on the basis of sex is much the same as for race, see Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), except that the employer may offer a bona fide occupational qualification for the disparate treatment. 42 U.S.C. Sec. 2000e-2(e)(1). The plaintiff may either offer direct proof of different treatment on the basis of sex, see Price Waterhouse v. Hopkins, --- U.S. ----, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), or may use the McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), burden-shifting method of proof. The issue for review in this case is whether, under McDonnell Douglas, King established a prima facie case that she was subject to disparate treatment.
 
 
 14
 King also claims she was subject to environmental sexual harassment, which is also recognized under Title VII. Meritor Savings Bank v. Vinson, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). The standard of proof for a claim of sexual harassment is somewhat different from the proof for disparate treatment. In these cases, a plaintiff establishes her claim by demonstrating that the employer "has created a hostile or abusive working environment." Id. at 2405. Under this analysis, a loss of a tangible job benefit is not necessary since the harassment itself affects the terms or conditions of employment. Bundy v. Jackson, 641 F.2d 934, 945 (D.C.Cir.1981). The harassment, however, "must be sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." Vinson, 106 S.Ct. at 2405 (citations omitted). It must deny the plaintiff "the right to participate in the work place on equal footing with others similarly situated." Scott v. Sears, Roebuck & Co., 798 F.2d 210 (7th Cir.1986). See also Bohen v. City of East Chicago, Ind., 799 F.2d 1180 (7th Cir.1986). Although a single act can be enough, Bohen, 799 F.2d at 1186-87, generally, repeated incidents create a stronger claim of hostile environment, with the strength of the claim depending on the number of incidents and the intensity of each incident. In applying this test, we look at the harassment from both the objective and subjective viewpoint of the plaintiff: in order to find discrimination, the court must conclude that "the conduct would adversely affect both a reasonable person and the particular plaintiff bringing the action." Brooms v. Regal Tube Co., 881 F.2d 412 (7th Cir.1989).
 
 
 15
 Regardless of whether recovery is promised under environmental sexual harassment or disparate treatment, the damages are the same: the plaintiff may seek reinstatement, back pay, and attorney's fees. 42 U.S.C. Sec. 2000e-5(g). Compensatory, nominal, and punitive damages are not available under Title VII. Bohen, 799 F.2d at 1184. Under claims of harassment, there will often be no loss of tangible job benefits, so recovery of back pay is extremely limited. In fact, the district court in this case found that while King lost her job, she did not prove that harassment caused the loss and therefore did not award back pay to King.
 
 
 16
 King also sued under section 1983, claiming that sexual harassment by Sonstein was a violation of the equal protection clause, under which she can recover compensatory and punitive damages. We have held that sexual harassment is a violation of equal protection, Bohen, 799 F.2d at 1185, although the precise parameters of this cause of action have not been well defined. In general, the claim follows the contours of Title VII claims. One difference between sexual harassment under equal protection and under Title VII, however, is that the defendant must intend to harass under equal protection, Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 1719-21, 90 L.Ed.2d 69 (1986), but not under Title VII, where the inquiry is solely from the plaintiff's perspective. Vinson, 106 S.Ct. at 2406; Brooms, 881 F.2d at 419. In the present case, the dispute centers around the issue of intent. To show intent for equal protection purposes, "it is not necessary to show that all women employees were sexually harassed. Harassment of the plaintiff alone because of her sex is enough." Bohen, 799 F.2d at 1187.
 
 
 17
 Finally, King claims she was retaliated against for exercising her first amendment rights. All public employees have a right to engage in free speech and self-expression while participating in political and social affairs. Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). If protected speech is a substantial factor in a negative employment action by a public employer, the employee may have a claim to reinstatement with backpay. Mt. Healthy City School Dist. v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 574-77, 50 L.Ed.2d 471 (1977). To prevail King must, under Mt. Healthy, identify a negative employment decision, and prove that some protected speech was the cause of the decision. Id.
 
 III.
 
 18
 Our standard of review for King's claims is well established. We review the district court's granting of a judgment n.o.v. de novo. Selle v. Gibb, 741 F.2d 896, 900 (7th Cir.1984). A motion for judgment n.o.v. should be denied where the evidence, along with all reasonable inferences, when viewed in the light most favorable to the non-moving party, is such that reasonable persons may reach different conclusions. Hohmann v. Packard Instrument Co., 471 F.2d 815, 819 (7th Cir.1973). Judgment n.o.v. should be granted if the evidence permits only one reasonable conclusion, that the moving party is entitled to judgment.
 
 A. Claims Against Sonstein
 
 19
 The district court found that "Sonstein sexually harassed King in violation of the Equal Protection Clause of the United States Constitution [and his] actions created an abusive working environment for King in violation of Title VII." Certainly, it would appear from the facts that the district court's findings are amply supported. Sonstein repeatedly verbally assaulted King, fondled her, and at one point, physically attacked her. His advances were unwelcome and he was so told. The district court and the jury respectively found that these advances created an abusive working environment sufficient to alter the conditions of employment in violation of Title VII and equal protection. Viewing the evidence in the light most favorable to King, it is difficult to imagine that a reasonable person, along with this particular plaintiff, would not be adversely affected.
 
 
 20
 Sonstein advances only one argument in his defense and only defends the equal protection claim. It is an argument which we believe to be profoundly flawed. He claims that his actions were merely the result of his desire for King as an individual and, therefore, were not sex-based harassment. To support this claim he cites Huebschen v. Dept. of Health and Social Sciences, 716 F.2d 1167, 1171 (7th Cir.1983). In Huebschen we held that sexual harassment was actionable under the equal protection clause. In applying the law to the facts of the case, we found that the claim of sexual discrimination had not been proven because the plaintiff was merely a "jilted lover;" the defendant, a female supervisor, harassed the plaintiff not because he was a male but because he had spurned her. On this basis, we held that the defendant's actions were the result of a personal vendetta and not sexually discriminatory.
 
 
 21
 Sonstein divides his argument applying Huebschen into two parts. First he claims that King was not a member of a protected class since she was simply a member of the class of people whom Sonstein desired to have an affair with. But King was and remains a woman. That is all that is required. Volk, 845 F.2d at 1433. Second, Sonstein argues that he lacked "hatred of the protected class." While violation of the equal protection clause requires discriminatory intent, we can find no "hatred" requirement in either the fourteenth amendment itself or the case law. In fact, the opposite may very well be true: a desire to protect women because of paternalism and admiration may be the cause of discriminatory action. For example, state protective laws have been invalidated on Title VII grounds, Williams v. General Foods Corp., 492 F.2d 399 (7th Cir.1974), as have laws that require women to take maternity leave. Cleveland Bd. of Educ. v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974). Similarly, pension systems that presumably benefit women have been invalidated. City of Los Angeles v. Manhart, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978). None of these discriminatory actions evidence a hatred or even a dislike of women. All that is required is that the action taken be motivated by the gender of the plaintiff. No hatred, no animus, and no dislike is required.
 
 
 22
 Nevertheless, Sonstein's arguments may still have some force. The theme of Huebschen is that disparate or harassing treatment is not sexually discriminatory if there is a cause other than gender. If, as a purely personal matter, a boss and a particular employee are not compatible, it would not be sexually discriminatory to harass the employee on that basis. We echoed this theme in Bohen where we stated that "it is a good defense, however, if the employer can show that the harassment suffered by the plaintiff was directed at the plaintiff because of factors personal to her and not because she is a woman." 779 F.2d at 1187 (citing Huebschen). This logic clearly retains vitality: the equal protection clause does not prohibit all negative employment actions against women.
 
 
 23
 Sonstein's argument, therefore, comes down to the assertion that harassment (Sonstein's argument does not address whether the conduct is harassing) based on sexual desire is not based on gender. One argument that Sonstein might advance to this end is that his sexual desire indicates that he did not have a policy of discrimination against womanhood as a whole; it was just King's particular sexual characteristics. We rejected this argument in Bohen where we stated "an equal protection plaintiff therefore need not prove a discriminatory policy against an entire class; discrimination against the plaintiff because of her membership in the class is by itself enough." 799 F.2d at 1187 (citations omitted). See also Volk v. Coler, 845 F.2d 1422, 1433 (7th Cir.1988) (plaintiff "need not prove that an entire class was discriminated against").
 
 
 24
 Another argument to support Sonstein's position might be that his desire for a sexual affair was based on her characteristics other than sex, similar to the defendant in Huebschen who disliked the plaintiff as a person. To this end, Sonstein claims it was King as an individual to whom he was attracted, not King as a woman. This argument, however, also misses the point. Sonstein wanted to have an affair, a liaison, illicit sex, a forbidden relationship. His actions are not consistent with platonic love. His actions were based on her gender and motivated by his libido.
 
 
 25
 We have, in fact, previously rejected this very argument in the context of quid pro quo harassment. In quid pro quo cases, a supervisor demands sexual favors from an employee as a condition of employment. This is exactly the situation where a supervisor's only motivation is to have a conjugal relationship with the employee. In Horn v. Duke we considered the argument that the quid pro quo demands based on sexual desire were not based on sex. 755 F.2d 599, 604 (7th Cir.1985). We found that "[b]ut for Horn's womanhood, Haas would not have demanded sex as a condition of employment. Because of her sex, therefore, Horn was disadvantaged by pressure to submit to an additional, humiliating condition of employment that served no legitimate purpose of the employer." Id. In other words, treatment of individual based on sexual desire is sexually motivated. Sonstein's sexual desire does not negate his intent; rather it affirmatively establishes it.
 
 
 26
 Yet a final argument that Sonstein might advance is that because his actions were motivated by her sex, he did not intend to harass her. It is clear, however, that the advances were unwelcome and that Sonstein knew they were unwelcome. This is not the case of a single, innocent, sexual query. Instead, we have repeated, unwelcome advances, fondling and a physical attack. The jury was justified in inferring intent to harass from these facts, and we affirm the verdict of sexual harassment against Sonstein.
 
 
 27
 To recover the $65,000 in past benefits and $150,000 in loss of future earnings, King makes two additional legal claims against Sonstein: retaliation for the exercise of her first amendment rights and discriminatory treatment. We agree with the district court that the facts do not support her claims. Sonstein was unable to deny her past benefits or future earnings because he refrained from participating in decisions regarding her job due to her complaint with the UWM Office of Equal Employment Opportunity. The only retaliatory or discriminatory action that King uses to support her case (or at least that we can discern from her rather opaque brief) is that Sonstein falsely accused her of using the photocopy machine for personal use. This incident does not support King's claim of retaliation because the accusation was made before King exercised her first amendment rights and therefore cannot be said to have been done in retaliation. And if it was discrimination, King did not prove she lost a job benefit, such as past benefits or future earnings, as a result of this incident--her contract was renewed soon after the accusation. She therefore fails to prove that she is entitled to any damages under these claims.
 
 
 28
 King attempts to bolster her arguments by maintaining that harassment, discriminatory treatment, and retaliation caused her to be permanently psychologically disabled, thereby preventing her from fulfilling the tenure requirements or obtaining another job elsewhere in academics. In Williamson v. Handy Button Machine Co., 817 F.2d 1290, 1294-95 (7th Cir.1987), we verified that damages are available for inability to work due to psychological problems resulting from discrimination. Nevertheless, examining the evidence in the light most favorable to King, we conclude that she has failed to prove that harassment, retaliation and discrimination caused her failure to meet the requirements for contract renewal. She offered no evidence that she had performed tenure-quality work prior to the discriminatory treatment or of her ability to perform adequately outside of the allegedly sexually harassing UWM environment. In addition, King was provided with ample time away from UWM during the summer to perform some research or engage in some professional activity. Yet, King failed to present any materials to the committee indicating any effort on her part to undertake such actions. We conclude, examining the evidence in the light most favorable to King, that King failed to prove retaliation or discrimination by Sonstein. Therefore, we affirm the district court's grant of judgment n.o.v. to the defendants on these counts.
 
 B. Claims Against Stein
 
 29
 King raised claims against Stein for discrimination and retaliation, under both Title VII and the equal protection clause, as well as deprivation of property without due process. As stated above, to prove retaliation, King must prove that exercise of her first amendment rights was a substantial factor in the adverse action. Mt. Healthy, 97 S.Ct. at 577. Nothing in the record, however, suggests that King was qualified for tenure renewal. A unanimous committee voted not to renew her contract on the basis of lack of endeavor in the area of scholarly publications, lack of commitment in presenting theoretical, clinical, or research papers, inability to make use of research time, and a lack of activity in professional associations. King offered nothing into evidence to negate the committee's findings or to prove that the committee did not correctly apply its contract renewal criteria. As a result, King has failed to prove that her exercise of first amendment rights was a substantial factor in Stein's vote not to renew her contract.
 
 
 30
 Her discrimination claim fairs no better. The record reflects that King was not subject to salary and workload disparities. At no time during any academic year, or even any semester, did King ever carry the heaviest teaching load. In fact, for the entire 1983-84 school year, King had the lightest load. There is also no evidence that she had a heavier load than was required of men in the department. Moreover, her salary was not different from other faculty members. She was hired in 1980 at a salary of $17,000. The next year her salary was increased to $18,985 and a man named McPherson, was hired by the department for a comparable position at $18,000. Each year she taught, her salary was increased and throughout that time, McPherson's salary was lower than her salary. In addition, there is no evidence, other than her bald assertion, that her salary was not comparable to the salaries of male faculty other than McPherson.
 
 
 31
 We are more troubled by the other, more nebulous incidents which King claims are sexually discriminatory, namely Stein's supposed limiting of her research time and mistreatment during the tenure process. It is difficult to tell from a cold record what the motivations were for a particular action, say, for example, Stein's decision to act as her presenter at the contract renewal hearing, or for example, the alleged attempts to limit her grant-buy-out time. For this reason, we defer to the jury and the district court for these types of findings. It is clear in this case, however, that no term, condition or privilege of employment was affected as a result of these actions. She had more time and funding for research than did any other faculty member in her program and there is no indication that additional research time would have brought her close to the contract renewal requirements. Similarly, it is clear that her problems with non-renewal went much deeper than merely who presented her to the committee; she wholly failed to meet the renewal requirements. To establish a prima facie case under McDonnell Douglas, she must prove that she was subject to treatment different from other members of the department that affected a term or condition of employment. She has not met this burden; her contract renewal chances were not diminished by Stein.
 
 
 32
 King also claims that Stein deprived her of a property right without due process of law. She makes two due process arguments. First, she claims that UWM and Stein did not provide her with a forum to secure redress for discrimination. She cites, Logan v. Zimmerman Brush Co., 455 U.S. 422, 102 S.Ct. 1148, 1157, 71 L.Ed.2d 265 (1982), for the proposition that a state-created inability to present claims of entitlement violate due process. Logan, however, is inapposite because here the state has not precluded her from bringing a claim securing her state-guaranteed rights. The rights she claims she could not enforce were not state-created property interests. They are federal statutory and constitutional claims. In addition, at all times during King's appointment UWM had an operating EEO office through which to pursue her claims. In fact, she maintained an action against Sonstein through that office which resulted in a favorable settlement. And if she were unsuccessful there, she was not precluded from bringing a claim in state court.
 
 
 33
 King also argues that she was deprived of a property interest without due process during her contract renewal procedings. This claim, however, is precluded by Board of Regents v. Roth, 408 U.S. 564, 578, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). In Roth, the Court held that an assistant professor terminated after one year had no property interest in his continued employment where his unilateral expectations had no basis in statute, contract, or mutually explicit understanding. King's appointment only lasted through her sixth year. She had no property interest in renewal. In addition, it is clear that there was no explicit mutual understanding: King's letter granting her re-appointment in her third year stated that the appointment was as a probationary faculty member. Without more evidence of a property interest, King's claim fails.
 
 
 34
 Finally, the district court granted Stein's motion for judgment n.o.v. regarding the punitive damages against Stein. Because we have affirmed the district court's grant of judgment n.o.v. against Stein on all the substantive counts, the punitive damage claim also fails.
 
 IV.
 
 35
 The judgments of the district court are AFFIRMED.
 
 
 36
 MANION, Circuit Judge, concurring in part and dissenting in part.
 
 
 37
 I concur in the majority's opinion to the extent it holds defendants free of liability. However, I disagree with the majority's conclusion that Steven Sonstein violated the Equal Protection Clause of the Fourteenth Amendment when he sexually harassed Catherine King.
 
 
 38
 In the fall of 1980, King was serving her first term as a faculty member. She described Sonstein as being very helpful and "appreciated Dean Sonstein's advice because she believed he was acting in good faith and he was the only supervisory level professor who took the time to talk with her." However, by November the conversations turned from helpful hints to sexual overtures. Between November and January there were several unwelcome advances, one of which was intolerable. In January, in a straightforward meeting with Sonstein, King set him straight, and demanded that such conduct cease. After that, for the most part Sonstein's overtures, inept, boorish, or uncouth as they may have been, ended. A year or so later King accused Sonstein of retaliating against her when he claimed she was using the copy machine for personal matters, but that was resolved with an administrative settlement.
 
 
 39
 The pivotal question is whether the apparent hostile atmosphere resulted from Sonstein's discriminatory treatment of King based on her membership in a class--female, as in Bohen v. City of East Chicago, 799 F.2d 1180 (7th Cir.1986)--or whether it was confined to a "group" of persons (King) with whom Sonstein had sought to have a romantic affair as in Huebschen v. Dept. of Health and Social Services, 716 F.2d 1167 (7th Cir.1983). The majority states that Sonstein "claims that King was not a member of a protected class as she was simply a member of the class of people whom Sonstein desired to have an affair with. But King was and remains a woman. That is all that is required." Majority opinion at 538. The majority cites Volk v. Coler, 845 F.2d 1422 (7th Cir.1988). But neither Volk nor Bohen says that being a woman is all that is required. Rather, these cases require harassment of the individual plaintiff because of her gender.
 
 
 40
 It does not appear that Sonstein harassed King because, for example, he did not like having women in the department. Rather, he harassed King because he was physically attracted to her albeit because she was, in his mind, an attractive woman. Huebschen held that "the proper classification, if there was one at all, was the group of persons with whom [defendant] had or sought to have a romantic affair.... [W]e simply are not persuaded that the Equal Protection Clause should protect such a class." Huebschen, 716 F.2d at 1172. Although there is some evidence that Sonstein made snide remarks and some minor overtures to other women faculty, Sonstein put King in a class by herself as his romantic target. The only way Huebschen would not apply is if we were to say that the classification of the target of a romantic affair applies only to men and not to women. Obviously such is not the case.
 
 
 41
 Sonstein's boorish advances were confined to King on account of his attraction to her personal qualities. Sonstein harassed Katherine King because she was Katherine King, not because she was female. "In an Equal Protection claim, the petitioner faces the tougher standard of proving purposeful and intentional acts of discrimination based on her membership in a particular class, not just on an individual basis." Forrester v. White, 846 F.2d 29, 32 (7th Cir.1988). Such activity may be actionable, but not as a violation of the U.S. Constitution. Because I believe Huebschen controls the disposition of the claim against Sonstein, I respectfully dissent.