Selinda OWENS, Plaintiff,

v.

Enis RAGLAND, Defendant.

No. 03–C–369–C.

United States District Court,
W.D. Wisconsin.

April 12, 2004.

---

3. The Wisconsin Equal Rights Division mistakenly treated the issue as one of fact.

Robert J. Gingras, for Plaintiff.

John M. Moore, Bell, Gierhart & Moore, S.C., Madison, WI, for Defendant.

## OPINION AND ORDER

CRABB, District Judge.

This is a civil action for monetary and injunctive relief, brought pursuant to 42 U.S.C. § 1983. Plaintiff Selinda Owens contends that defendant Enis Ragland sexually harassed her in violation of the equal protection clause of the Fourteenth Amendment and then retaliated against her when she complained about it, in violation of the First Amendment. Jurisdiction is present under 28 U.S.C. § 1331.

Defendant has moved for summary judgment on both of plaintiff's claims. The motion will be denied as to plaintiff's equal protection claim and granted with respect to her free speech claim. Defendant's sole argument with respect to plaintiff's equal protection claim is that she has failed to create a genuine issue of material fact as to her claim that defendant harassed her because of her sex. However, I disagree with defendant that harassment based on personal attraction cannot also be based on sex. Viewing the evidence in the light most favorable to plaintiff, a reasonable jury could find that defendant would not have exhibited the same conduct toward plaintiff if she were a man. Accordingly, defendant's motion for summary judgment will be denied with respect to this claim.

With respect to the retaliation claims, plaintiff has identified eight actions in her brief that she alleges defendant took against her because of her complaints about sexual harassment. Each of these claims fail because they are based on inadmissible evidence, because plaintiff has failed to show that the actions were sufficiently adverse to implicate the First Amendment or because plaintiff has failed to adduce evidence that defendant took the actions he did for a retaliatory reason.

Before I set forth the undisputed facts, I note that plaintiff supports several of her proposed findings of .fact with nothing more than the allegations in her complaint. *E.g.,* PPFOF, dkt. # 23, ¶¶ 100–02, 110, 116, 120–21, 146, 168. As defendant points out, the general rule is that a plaintiff may not rely on the allegations in her complaint in opposing a motion for summary judgment, at least if the allegations are not admitted in the defendant's answer. *Sparing v. Village of Olympia Fields,* 266 F.3d 684, 692 (7th Cir.2001). There is a limited exception: when a complaint is verified, a court will treat it as an affidavit and may consider it so long as it otherwise meets the criteria for admissibility. *Ford v. Wilson,* 90 F.3d 245, 246–47 (7th Cir.1996).

In this case, plaintiff did not declare under penalty of perjury that the allegations in her complaint were true. However, she argues that the court may consider these allegations regardless unless defendant has submitted admissible evidence that contradicts the allegations. She relies on a sentence in the advisory committee notes to Rule 56: "Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented."

It is difficult to see the logic of plaintiff's argument. Defendant is not required to contradict inadmissible evidence; he only has to object to its admissibility. Plaintiff suggests a rule that would allow courts to consider inadmissible evidence even when the opposing side objected to it unless the other party could adduce evidence showing that the inadmissible evidence was false. Rule 56 does not require such an absurd result. It is true, as the advisory committee notes state, that defendant has the initial burden to show that he is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, this rule has no bearing on the admissibility of a particular piece of evidence. It means only that defendant cannot prevail on his summary judgment motion if he does not support his motion with any evidence or argument. Accordingly, I have not considered any of plaintiff's proposed findings of fact that derive solely from her complaint.

## UNDISPUTED FACTS

### A. *Plaintiff's and Defendant's Relationship*

In 1996, plaintiff Selinda Owens began working as a secretary in the affirmative action office for the City of Madison. She was later promoted to the position of an equal opportunity assistant and then reclassified as an equal opportunity analyst. From 1997 to April 2003, defendant Enis Ragland was the chief of staff for Susan Bauman, Madison's mayor. Plaintiff met defendant when he was the mayor's chief of staff. Defendant would visit the affirmative action office at least once a week between 1997 and 2000. Defendant's job responsibilities did not include affirmative action.

In August 1999, plaintiff sent defendant an email at work thanking him (the email does not indicate what the thanks is for). Defendant responded, "You are welcome, now what do I get back in return."

Plaintiff and defendant went to lunch at least two or three times. In September 1999, defendant sent an email to plaintiff with the message, "I am still waiting for my lunch." He also wrote, "But I don't have a problem buying you lunch." Also in September 1999, defendant sent two emails to several African American female city employees. The emails were titled, "Black Women are Wonderful" and "Nothing Like a Black Man."

At a conference in 2000, defendant met with plaintiff in her hotel room to discuss a residency requirement that plaintiff needed to meet to obtain a promotion. He sat next to her on the bed, placed his hands on her shoulders and said that he would look out for her if she would look out for him. Plaintiff later sent an email to defendant with the subject line, "THANKS." In the body of the email, plaintiff wrote, "YOU DA MAN." In response, defendant wrote, "I could be that's up to you."

At some point before October 2000, defendant asked plaintiff for a hug. Although she did hug him, she thought it was odd that he asked.

(The remaining facts surrounding plaintiff's sexual harassment claim are disputed. These facts will be discussed in the opinion as necessary.)

### B. Complaints of Harassment

In October 2000, plaintiff approached Kirbie Mack, the director of the affirmative action department, to complain about defendant. Mack is defendant's sister-in-law. Plaintiff told Mack that defendant repeatedly called her about matters not related to work, sent her inappropriate emails and made sexually explicit comments that made her uncomfortable. For example, plaintiff told Mack that defendant had suggested that plaintiff perform oral sex on him in his office and that he said to her, "I could make you come without having sex with you." Plaintiff gave Mack several emails that defendant had sent her.

After several conversations, Mack told plaintiff that Mack had to report the complaint because she could be subject to liability if she did not. Mack met with Bauman soon after this. (The parties dispute the contents of Mack's and Bauman's discussion.) Bauman then met with defendant. She told him that Mack had "expressed concerns" to her about defendant's spending too much time with employees in the affirmative action office. Bauman asked defendant not to go to that office unless he had business there.

Mary Ann Stalcup, the human resources director, interviewed plaintiff about her complaint on May 13, 2003. Stalcup spoke with the mayor, recommending a full investigation.

### C. Changes in the Affirmative Action Office

Mack took another job in February 2003. Just before she left, Mack told plaintiff that she was going to recommend a reclassification of plaintiff's job. When an employee is performing job duties beyond those outlined in her job description, the employee's supervisor should request a reclassification of her position, which is usually accompanied by a pay increase. In order to obtain reclassification for a position, the employee seeking reclassification or the department head must draft a document identifying the additional responsibilities that justify a reclassification. The department head must then ask the human resources department to conduct a study. If human resources recommends a change, the personnel board, the board of estimates and the common council must approve the decision. Mack met with Larry Oaks in human resources about the possibility of reclassifying plaintiff's position. Plaintiff gave Mack a description of her job responsibilities. When Mack left the office, plaintiff believed that the human resources department was considering her

reclassification request. Plaintiff spoke to Oaks about a reclassification of her position, but she does not remember what Oaks said.

Norman Davis was appointed on an interim basis as director of the affirmative action office after Mack left. In April 2003, David Cieslewicz was inaugurated as mayor of the City of Madison. Defendant became the director of the affirmative action office on April 21, 2003.

### D. Defendant Learns of Plaintiff's Allegations

On April 25, 2003, defendant received a call from Janet Peraino in the mayor's office. Peraino told defendant that a local newspaper reporter was inquiring whether a complaint had been filed against defendant in connection with emails that he had sent. Defendant understood that it was plaintiff who was alleging sexual harassment. After the conversation was finished, defendant went to speak with plaintiff. He told her that the press had been asking him about sexual harassment. He was concerned about the inquiry because it related to his character and profession.

### E. Events in the Office After Defendant Became Director of Affirmative Action

When defendant became director of the affirmative action office, he sent out an email directive stating that plaintiff would be reporting to him, that he was rescinding a reorganization that Norm Davis had implemented and that plaintiff would no longer be reporting to Christie Hill. Plaintiff worked in the office for three days after defendant took over and then "took some time off." She returned to work for 1–2 weeks and then left again. Plaintiff has not yet returned to work.

One of the duties relied upon by plaintiff to justify a reclassification was her development of the language assistance program. While plaintiff was absent, defendant authorized another employee to assume responsibility for this program.

### F. Defendant's Public Response to the Allegations

On May 3, 2003, The Wisconsin State Journal, reported on an ethics complaint filed by a secretary in the affirmative action office, Kia Thomas, against defendant. In her complaint, Thomas had stated that she believed defendant should not remain as the director of the affirmative action office. As grounds for her position, she had relied on plaintiff's sexual harassment complaint. She had also noted that defendant "made sexually explicit comments to me." In the May 3 article, defendant was reported as stating that the allegations were brought by "disgruntled employees." The article does not refer to plaintiff. In an article dated May 22, 2003, defendant was quoted as making the same statement.

### G. Investigation of Plaintiff for Falsifying Documents

In April 2003, while Norman Davis was the acting director of the affirmative action office, allegations arose that defendant had falsified time sheets. (Neither party offers admissible evidence regarding who brought these allegations forward.) On May 6, 2003, defendant sent a request for emails generated between 12/22/03 and 1/4/03 by plaintiff, Thomas and Don Studesville. This request was part of an investigation into allegations that the three employees had falsified time sheets. On the same day, defendant sent an email to Dave Cieslewicz, Norman Davis and Christie Hill in which he referred to plaintiff's and Thomas's complaints against him.

In a memorandum to plaintiff dated May 27, 2003, Brad Wirtz informed plaintiff that she was being investigated for falsifying time sheets between December 2002 and January 2003, when Mack was still plaintiff's supervisor. Only plaintiff and

Kia Thomas were subjects of this investigation.

## OPINION

### A. Sexual Harassment

Plaintiff brings her claim of sexual harassment under the equal protection clause and 42 U.S.C. § 1983. The equal protection clause prohibits state and local public officials from treating someone differently because of his or her membership in a particular group, unless the differential treatment is sufficiently justified by a government interest. *Schroeder v. Hamilton School District*, 282 F.3d 946, 950–51 (7th Cir.2002). The Court of Appeals for the Seventh Circuit has long recognized that the equal protection clause extends to claims of racial and sexual harassment. *E.g., Bohen v. City of East Chicago*, 799 F.2d 1180, 1185 (7th Cir.1986) ("Sexual harassment of female employees by a state employer constitutes sex discrimination for purposes of the equal protection clause of the fourteenth amendment. Creating abusive conditions for female employees and not for male employees is discrimination."). Although there has been little extended discussion of the issue, the court of appeals has assumed in a number of cases that many of the standards for evaluating harassment claims under Title VII of the Civil Rights of 1964 should apply to harassment claims under § 1983. *E.g., Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014, 1036–37 (7th Cir.2003); *Williams v. Seniff*, 342 F.3d 774, 791 (7th Cir.2003); *Salvadori v. Franklin School District*, 293 F.3d 989, 997 (7th Cir.2002); *McPhaul v. Board of Commissioners of Madison County*, 226 F.3d 558, 566 n. 6 (7th Cir.2000); *Doe v. City of Belleville*, 119 F.3d 563, 596 (7th Cir.1997). One exception is that a public employee alleging harassment under § 1983 may the sue the alleged harasser individually, as plaintiff did in this case;

she need not show that her employer is liable. *Bohen*, 799 F.2d at 1187.

To prevail on a sexual harassment claim in a Title VII case, the plaintiff must show that the defendant's behavior was unwelcome, severe or pervasive and based on sex. *Robinson v. Sappington*, 351 F.3d 317, 328 (7th Cir.2003); *Reed v. Shepard*, 939 F.2d 484, 491 (7th Cir.1991). Defendant has not focused on the first two elements. Although defendant writes in his brief in chief that "it does not appear that [the alleged] comments would rise to the level of sexual harassment," Dft.'s Br., dkt. # 13, at 3, in his reply brief, defendant writes that he "will not ... disput[e]" the issue "whether this conduct could be considered severe or pervasive enough to constitute sexual harassment" for the purposes of his summary judgment motion. It is therefore unnecessary to consider this issue. Defendant's sole argument is that plaintiff has failed to show that there is a genuine issue of material fact as to whether defendant's alleged harassment was based on sex. According to defendant, the evidence shows at most that defendant's alleged sexual advances were based on "characteristics personal to" plaintiff. *Id.*

As an initial matter, I note that, unlike Title VII, the guarantees of the equal protection clause are not limited to a specified list of groups. Although Title VII applies only to discrimination based on sex, race, ethnicity, national origin and religion, the equal protection clause extends to all forms of discrimination. *E.g., Nabozny v. Podlesny*, 92 F.3d 446 (7th Cir.1996) (recognizing harassment claim under equal protection clause based on sexual orientation). Even individuals not claiming to be a part of any identifiable group may assert an equal protection claim under a "class of one" theory if there is no rational basis for the differential treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 120 S.Ct.

1073, 145 L.Ed.2d 1060 (2000). Thus, plaintiff's claim of discriminatory harassment would not necessarily fail even if defendant's treatment of her were based on her "personal characteristics" rather than her sex. However, because sex discrimination is the only type of discrimination argued by plaintiff, I will consider only whether there is sufficient evidence to allow a reasonable jury to find that defendant's alleged conduct was based on plaintiff's gender.

Plaintiff has proposed facts that defendant made the following types of statements to her:

- "Bet I could make you cum without fucking you."
- "I know you got some sweet tasting pussy."
- "You know you want me to eat your pussy."
- "I like to watch you walk away."
- "Can I be your sugar daddy?"

In addition, plaintiff proposed a factual finding that once during a meeting with defendant in his office, defendant pushed his chair back, asked plaintiff to get under his desk and indicated that her head would be in his lap. Defendant stated, "No one would find you here."

Defendant is correct that not all harassment a woman receives may be considered sex discrimination. Even the most severe form of harassment is not actionable under federal law if the defendant treats all employees with equal severity. *Spearman v. Ford Motor Co.*, 231 F.3d 1080, 1086 (7th Cir.2000) ("Title VII is not a 'general civility code' for the workplace.") (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 78, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)); *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 976–77 (7th Cir. 2004) (no claim for sex discrimination when supervisor treated everyone poorly). Even sexually explicit harassment is not necessarily discrimination because of sex.

*Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1009 (7th Cir.1999) ("[S]exual content or connotations of workplace harassment do not automatically render that conduct sex discrimination."). For example, the Court of Appeals for the Seventh Circuit has held that Title VII does not impose liability on an "equal opportunity" sexual harasser, one who harasses both men and women. *Holman v. Indiana*, 211 F.3d 399 (7th Cir.2000). *See also Rizzo v. Sheahan*, 266 F.3d 705 (7th Cir.2001) (although defendant's comments were both sexually explicit and severe, no Title VII liability because facts showed that harassment was based on animosity defendant felt for plaintiff's husband rather than her sex).

In any sex discrimination case in the employment context, the fundamental question is whether "members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale*, 523 U.S. at 80, 118 S.Ct. 998 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 25, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (Ginsburg, J., concurring)). When a heterosexual male makes sexually explicit proposals to a woman, "it is reasonable to assume those proposals would not have been made to someone of the same sex." *Id.* The natural inference in such a case is that the woman's gender is at least part of the reason for the harassment.

■ As noted above, the alleged harassment in this case included sexually explicit comments and proposals. There is no evidence that defendant is gay or bisexual or that he has engaged in similar conduct with men. In the absence of such evidence, a reasonable jury could find that defendant's alleged conduct was based on sex.

Defendant repeatedly makes the argument that because plaintiff has not adduced any evidence that other *women*

were sexually harassed, the court must conclude that whatever harassment did take place was a result of plaintiff's personal characteristics rather than her gender. However, even defendant recognizes that the court of appeals has held that a plaintiff need not make such a showing to prove sex discrimination. *King v. Board of Regents of the University of Wisconsin System*, 898 F.2d 533 (7th Cir.1990) (rejecting argument that harassment "based on sexual desire is not based on gender"); *Volk v. Coler*, 845 F.2d 1422, 1433 (7th Cir.1988) ("Discrimination and harassment against an *individual* woman because of her sex is a violation of the equal protection clause."); *Bohen*, 799 F.2d at 1187 ("[I]t is not necessary to show that all women employees are sexually harassed. Harassment of the plaintiff alone because of her sex is enough."). Even if defendant's reasons for making the statements were not *solely* because of her gender (if he chose plaintiff because she was a woman *and* he was sexually attracted to her), this would be enough to show discrimination because of sex. *See Sprogis v. United Air Lines, Inc.*, 444 F.2d 1194 (7th Cir. 1971) (invalidating a company policy that denied employment to anyone who was female *and* married while noting that "the scope of [Title VII] is not confined to explicit discriminations based 'solely' on sex"); *Hunter v. Underwood*, 471 U.S. 222, 225, 105 S.Ct. 1916, 85 L.Ed.2d 222 (1985) (equal protection violated when person's status in group is "a motivating factor" in decision); *Personnel Administrator v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979) (discrimination shown when decision maker chose course of action "at least in part 'because of'" individual's membership in particular group).

Defendant relies on *Trautvetter v. Quick*, 916 F.2d 1140, 1150 (7th Cir.1990), to argue that the alleged harassment in this case could not have been based on gender. In *Trautvetter*, the plaintiff was an elementary school teacher; the defendant was the principal. The defendant began making "romantic overtures" toward the plaintiff, which included asking her to "share a bottle of wine" and "plac[ing] one of his hands next to one of hers such that the two were touching." *Id.* at 1142. Although she "politely" declined his advances initially, eventually the two became involved in a sexual relationship. The relationship ended after the plaintiff told her husband about the affair. After the superintendent found out, the plaintiff claimed that the defendant had "pressured her into entering into the sexual relationship." *Id.* at 1146.

The district court dismissed the plaintiff's sexual harassment claim on the ground that she had to failed to raise a genuine issue of material fact as to whether the defendant's advances were "unwelcome." The court of appeals agreed with the district court that the "record is void of any evidence showing that [the plaintiff] declared [the defendant's] advances to be unwelcome." *Id.* at 1149. Nevertheless, the court went on to affirm on the ground that "there is nothing in the record to indicate that [the defendant's] feelings were based on anything but a personal attraction to [the plaintiff]." *Id.* at 1152.

I disagree with defendant that *Trautvetter* is controlling in this case. I note first that it is difficult if not impossible to extrapolate a clear holding from *Trautvetter*. The court did not explain to what extent personal attraction and sex discrimination were mutually exclusive concepts and it did not set forth any guidelines for determining when sexual harassment is based solely on personal attraction and when it is based on sex. Further, the court acknowledged its earlier opinion in *King*, 898 F.2d 533, in which it had held that sexual harassment based on sexual desire could

be harassment because of sex and *Volk*, 845 F.2d 1422, and *Bohen*, 799 F.2d 1180, in which it had held that a woman in a sexual harassment case need not show that other women were also sexually harassed. However, the court distinguished *King* and *Bohen* by noting that those case involved "sexual abuse" and "offensive touching," even though the court in *Trautvetter* declined expressly to decide the case on the ground that there was no evidence of unwelcome conduct. *Id.* at 1152.

Second, I note that *Trautvetter* is somewhat of a jurisprudential orphan. The court of appeals has cited *Trautvetter* few times since it was decided; the court has never again relied on its reasoning regarding "personal characteristics" to deny a sex discrimination claim. Rather, the court has assumed repeatedly that sexually explicit conduct by a man toward a woman is "because of sex." *E.g.*, *Wyninger*, 361 F.3d at 972–72, 976–77 (sexual innuendos by man to woman could be "fairly read to be motivated by [the plaintiff's] gender"); *Hardy v. University of Illinois at Chicago*, 328 F.3d 361 (7th Cir.2003) (assuming that sexual advances were because of sex); *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir.2003) (assuming that sexually explicitly comments by male to female were because of sex); *Quantock v. Shared Marketing Services, Inc.*, 312 F.3d 899, 904 (7th Cir.2002) (assuming that proposal for sex was based on gender); *Haugerud v. Amery School District*, 259 F.3d 678, 692 (7th Cir.2001) (stating that "[h]arassment is not *limited* to sexual desire") (emphasis added). In fact, *Trautvetter* harkens back to the long discredited cases from the 1970s in which courts dismissed sexual harassment claims on the ground that in such cases gender was "incidental." *E.g.*, *Tomkins v. Public Service Electric & Gas Co.*, 422 F.Supp. 553, 556 (D.N.J.1976), *rev'd* 568 F.2d 1044 (3d Cir.1977).

In any event, to the extent that *Trautvetter* holds that sexual harassment based on personal attraction cannot be sex discrimination, it is inconsistent with *Oncale*, 523 U.S. at 80, 118 S.Ct. 998, in which the Court concluded that one way to prove that harassment was "because of sex" is to show that it was based on "sexual desire." Again, the bottom line in any discrimination case is whether a member of one sex was subjected to a burden that members of the opposite sex were not. Because there is nothing in the record to suggest that defendant would have made sexual advances toward plaintiff if she were male, defendant's motion for summary judgment will be denied as to plaintiff's equal protection claim.

### B. *Retaliation*

Plaintiff has identified eight actions in her brief that she alleges defendant took in retaliation for her complaints about sexual harassment: (1) he directed plaintiff to "lie" about her problems with him; (2) he revoked her email access; (3) he "rifled through" her desk and personal items; (4) he changed the reporting structure so that plaintiff reported directly to him; (5) he called plaintiff a "disgruntled employee" in a newspaper interview; (6) he diminished her job responsibilities; (7) he failed to reclassify plaintiff's job; and (8) he investigated plaintiff for allegedly falsifying time sheets.

There is no dispute that plaintiff's complaints are protected speech under the First Amendment. Sexual harassment is a matter of a public concern. *Johnson v. University of Wisconsin—Eau Claire*, 70 F.3d 469, 482 (7th Cir.1995); *Gray v. Lacke*, 885 F.2d 399, 411 (7th Cir.1989); *Callaway v. Hafeman*, 832 F.2d 414, 417 (7th Cir.1987). Further, defendant does not argue that suppressing plaintiff's speech could be justified by a government interest in "promoting effective and effi-

cient public service." *Gustafson v. Jones,* 290 F.3d 895, 909 (7th Cir.2002). Thus, defendant's motion for summary judgment must be denied if plaintiff can demonstrate that there is a genuine issue of fact whether defendant was motivated by plaintiff's speech and whether his actions were sufficiently adverse to implicate the protections of the First Amendment. *Kmetz v. State Historical Society,* 304 F.Supp.2d 1108 (W.D.Wis.2004).

■ An initial problem with some of plaintiff's retaliation claims is that she has failed to adduce any admissible evidence that the retaliatory actions occurred. With respect to plaintiff's claims that defendant told her to lie, "rifled through" her desk and blocked her access to email, she cites only her complaint for support. As noted above, allegations in a complaint are not admissible evidence for the purpose of opposing a motion for summary judgment. Accordingly, these three claims must be dismissed.

Plaintiff has not developed any argument supporting her claim about the change in reporting structure. She writes only, "The fact that [defendant] immediately revoked the reporting structure set up by Norm Davis and had Owens reporting directly to him is evidence of his desire to get control over Owens." Plt.'s Br., dkt. # 21, at 14. This sentence defeats plaintiff's own argument. Plaintiff appears to concede that the change in reporting structure is not retaliation in and of itself but at most would be "evidence" that other actions were taken for retaliatory reasons. The new reporting structure did not change plaintiff's working conditions. If, as a result of defendant's supervisory authority, he was able to take adverse actions against plaintiff, it would be those actions that would constitute retaliation and not the change itself.

■ With respect to defendant's statement that plaintiff was a "disgruntled employee," defendant argues that the action was not sufficiently adverse, and even if it were, there is insufficient evidence to show that he had a retaliatory motive in making the statement. The parties recognize the correct standard for determining whether a party may recover under the First Amendment for a retaliatory action: whether the defendant's action "is likely to deter the exercise of free speech, whether by an employee or anyone else." *Power v. Summers,* 226 F.3d 815, 820 (7th Cir.2000). However, the standard is far from self-defining. It gives courts little guidance in deciding what actions are likely to deter an individual from speaking out. In close cases, when the answer is not clear, society's interest in protecting First Amendment rights might support a conclusion that recovery is permitted. In this case, however, there are First Amendment interests on *both* sides. Plaintiff's position is that defendant's *speech* should be considered retaliatory conduct. Adopting plaintiff's position would suggest a rule that would preclude an individual accused of wrongdoing from speaking out on his or her own defense if doing so would cast the accuser in a less than positive light.

In some circumstances, defamation could meet the standard for adversity and such speech would not be protected by the First Amendment. *E.g., DeGuiseppe v. Village of Bellwood,* 68 F.3d 187, 192 (7th Cir.1995) ("false accusations" may constitute retaliation under First Amendment). However, plaintiff has pointed to no evidence that defendant's statement was false (that she was not disgruntled). Further, although I am hesitant to hold as matter of law that particular conduct is "so trivial that a person of ordinary firmness would not be deterred from holding or expressing those beliefs," *Pieczynski v. Duffy,* 875 F.2d 1331, 1333 (7th Cir.1989), plaintiff cites no case that permitted recovery in a retaliation case for a similar statement.

The only cases in which the court of appeals has concluded that speech was sufficiently adverse to constitute retaliation involved threats or harassment of some kind. *Compare McDonnell v. Cisneros,* 84 F.3d 256, 258 (7th Cir.1996) (assuming that being "ostracized" and "ridiculed" would be sufficiently adverse); *and Bart v. Telford,* 677 F.2d 622, 625 (7th Cir.1982) (campaign of petty harassment sufficiently adverse); *and Yoggerst v. Stewart,* 623 F.3d 35, 39 (7th Cir.1980) (reprimand suggesting future discharge is sufficiently adverse), *with Thomsen v. Romeis,* 198 F.3d 1022, 1027 (7th Cir.2000) (questioning whether reprimands were sufficiently adverse when plaintiff made no showing that they had disciplinary consequences). *See also Suarez Corp. v. McGraw,* 202 F.3d 676, 687 (4th Cir.2000) (collecting cases holding that critical speech is not retaliation in violation of First Amendment unless it is threatening, intimidating or false; otherwise, First Amendment rights of defendant would be violated).

A plaintiff must show at least that she has somehow been "made worse off" by the retaliatory conduct and that she experienced "more than an inconvenience," *DeGuiseppe,* 68 F.3d at 192, which plaintiff has failed to do. Plaintiff argues that defendant's statement was intended to "embarrass, degrade and belittle" her, but there is no evidence that plaintiff's reputation was affected by defendant's statement or that it likely would have been. It could hardly come as a surprise that someone accused of misconduct would deny the accusation while also suggesting the accuser had other motivations for making the allegation. In sum, I cannot conclude that one use of the word "disgruntled" causes an injury significant enough to justify a federal lawsuit.

Plaintiff argues next that defendant violated her First Amendment rights when he reassigned her language assistance program duties to another employee in the affirmative action office. Defendant does not deny that reducing an employee's responsibilities may constitute retaliation under the First Amendment. *Dahm v. Flynn,* 60 F.3d 253, 257 (7th Cir.1994). However, I agree with defendant that the available evidence would not permit a reasonable jury to find that he made this decision in retaliation for plaintiff's complaints. The only fact supporting this claim is the closeness in time between plaintiff's complaints and the change in duties, something that plaintiff does not even argue in her brief. In any event, the general rule in this circuit is that temporal proximity is insufficient by itself to show a retaliatory motive. *Stone v. City of Indianapolis Public Utilities,* 281 F.3d 640, 644 (7th Cir.2002).

Timing alone could be enough in a case in which the evidence does not show an alternative explanation for the decision. *E.g., Walker v. Board of Regents of the University of Wisconsin System,* 300 F.Supp.2d 836, 862 (W.D.Wis.2004) (probative value of temporal proximity enhanced because plaintiff had adduced evidence that defendant had not given plaintiff any indication that she was performing inadequately until after she spoke out). In this case, however, it is undisputed that plaintiff has been out of the office almost the entire time that defendant has been the affirmative action director. There is nothing suspicious about reassigning the work of an absent employee. Work cannot sit unfinished indefinitely. Plaintiff has not adduced any evidence to suggest that defendant's motive was revenge rather than productivity, such as evidence that other absent employees have not had their responsibilities reassigned or that defendant has told her that she will be unable to take over the language assistance program when she returns. Under these circumstances, I cannot conclude that the evi-

dence is sufficient to allow plaintiff to proceed to trial on this claim. *See Pugh v. City of Attica, Indiana,* 259 F.3d 619, 630 (7th Cir.2001) (temporal proximity insufficient when record "establish[ed] that the City discharged Mr. Pugh for misappropriation of funds"); *Thomsen v. Romeis,* 198 F.3d 1022, 1028 (7th Cir.2000) (closeness in time not suspicious when other evidence established legitimate reason for termination).

With respect to the job reclassification and investigation for falsifying time sheets, defendant argues that there is no evidence implicating him in either one of these decisions. I agree with respect to plaintiff's failure to obtain a job reclassification. Although the parties dispute whether plaintiff's former supervisor told Larry Oaks in human resources to initiate the process for reclassification, this dispute would be material only if plaintiff's suit were against Oaks. Whether it was Mack, Owens or Oaks that dropped the ball makes no difference because there are no facts showing that defendant even knew that plaintiff was seeking reclassification. Plaintiff cannot hold defendant liable for sabotaging a process that he did not even know was taking place.

Plaintiff appears to suggest that because she was performing duties that justified reclassification, defendant should have requested the reclassification himself even if he did not know that plaintiff wanted one. Although the facts show that a department head may ask human resources directly to reclassify an employee's position, I cannot conclude that a reasonable jury could find that defendant's failure to do so was a result of retaliatory animus. Plaintiff has adduced no evidence that defendant excepted plaintiff from a general policy of investigating on his own each of his subordinate's responsibilities to determine whether any of them would be eligible for a reclassification. Even if defendant were

so inclined, it would be unlikely that he would attempt to evaluate the position of an employee who was absent during most of his tenure.

The investigation for falsifying time sheets is a closer call, but only slightly. The parties dispute whether it was Norman Davis or defendant that initiated the investigation. Defendant and Mary Ann Stalcup, the human resources director, testified that it was Davis. Dep. of Enis Ragland, dkt. # 9, at 105–06; Dep. of Mary Ann Stalcup, dkt. # 8, at 34–35. Davis testified that he "doesn't think" he requested a "formal investigation" into the allegations against plaintiff. Dep. of Norman Davis, *attached to* Affidavit of Robert Gingras, dkt. # 24, at 93–94. Although this testimony might show that there is a genuine dispute as to who chose to initiate the investigation, at least "formally," I conclude that the dispute is not material. Plaintiff does not allege that defendant manufactured the allegations or that he induced a third party to do so. It is undisputed that the allegations arose while *Davis* was the director.

Plaintiff suggests that it is suspicious that defendant took action on the allegations when Davis did not, even though the allegations did not arise until the end of his Davis's tenure in April 2003. Even if Davis could have done more, his failure to act does not show that defendant's reasons for allowing the investigation to go forward were retaliatory. Falsifying documents is a serious charge. Whether or not the allegations were true, a failure to investigate such a charge would be an abdication of defendant's responsibilities as director of the office.

Plaintiff also points out that defendant sent emails about plaintiff's harassment complaint and the investigation of her conduct on the same day and that she and Thomas are the only ones being investigat-

ed. The probative value of the first fact is extremely limited. The allegations against defendant and plaintiff arose around the same time, so it should not raise suspicion if defendant was addressing both issues at the same time. Second, the absence of an investigation into other employees' conduct would be probative only if others had been accused of the same conduct and defendant chose to ignore the allegations about other employees. The only evidence suggesting that others had been accused is a request from defendant in May 2003 for records relating to plaintiff, Thomas and Don Studesville. This request does not support plaintiff's position because it shows that defendant was not limiting his inquiries to plaintiff and Thomas. Although it appears that Studesville is no longer being investigated, plaintiff has not adduced any evidence that the evidence against all three employees is similar or even that it was defendant who chose not to pursue an investigation against Studesville.

Certainly, it would not be surprising to find out that defendant may have been a bit more eager to move the investigation along because plaintiff was its subject. However, any finding that plaintiff's complaints motivated defendant's to decision to initiate or continue an investigation would be no more than speculation, which is insufficient to create a material factual dispute. *McCoy v. Harrison*, 341 F.3d 600, 604 (7th Cir.2003). Plaintiff has not adduced sufficient evidence to allow a reasonable jury to find that defendant retaliated against her for complaining about sexual harassment. Accordingly, defendant's motion for summary judgment will be granted on these claims.

### ORDER

IT IS ORDERED that

1. Defendant Enis Raglund's motion for summary judgment is DENIED with respect to plaintiff Selinda Owens's claim that defendant discriminated against her on the basis of sex in violation of the equal protection clause.

2. Defendant's motion for summary judgment is GRANTED with respect to plaintiff's claim that defendant retaliated against her in violation of the First Amendment.